IN THE SUPREME COURT OF MISSISSIPPI

NO. 94-CA-00055-SCT

*ODIS BEECH, LURVIA BEECH, WILSON WILLIAMS AND ERNESTINE B. WILLIAMS*

*v.*

*LEAF RIVER FOREST PRODUCTS, INC., WARREN RICHARDSON, ACKER SMITH, LEAF RIVER CORPORATION, GREAT NORTHERN NEKOOSA CORPORATION AND GEORGIA PACIFIC CORPORATION*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/09/93 |
| TRIAL JUDGE: | HON. JAMES E. THOMAS |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | ROBERT A. PRITCHARD |
| | KENNETH BARKLEY ROBERTSON |
| | IRWIN W. STOLZ, JR. |
| | SEATON D. PURDOM |
| ATTORNEYS FOR APPELLEES: | W. WAYNE DRINKWATER, JR. |
| | JOE SAM OWEN |
| NATURE OF THE CASE: | CIVIL - PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED - 3/20/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/10/97 |

BEFORE SULLIVAN, P.J., McRAE AND ROBERTS, JJ.

SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:

## STATEMENT OF THE CASE AND FACTS

¶1. In 1989 the Mississippi Department of Environmental Quality released a report showing that fish in the Leaf River and Pascagoula River contained dioxin, and warned citizens to refrain from eating the fish. Subsequently, the Mississippi Commission on Wildlife, Fisheries, and Parks ordered that the Leaf River, Pascagoula River, and Escatawpa River be closed to commercial fishing. This order was

later rescinded in January of 1991. However, the report spurred a flurry of litigation between residents along the rivers and the companies allegedly responsible for the water contamination. *See Leaf River Products, Inc. v. Ferguson*, 662 So.2d 648, 650-51 (Miss. 1995).

¶2. Odis and Lurvia Beech, and Wilson and Ernestine Williams are all residents of Plum Bluff Estates on the Pascagoula River. On February 26, 1991, the Beeches filed a complaint against Leaf River Forest Products, Inc., Warren Richardson, Acker Smith, Great Northern Nekoosa Corporation, and Georgia Pacific Corporation in the Circuit Court of George County for loss in property value, mental and emotional anguish, physical and emotional suffering, fear of future disease, and loss of enjoyment of life. Richardson was General Manager of Leaf River, and Smith was Manager of Environmental Affairs for Leaf River. Great Northern Nekoosa Corporation was the parent company of Leaf River until being acquired by Georgia Pacific Corporation. The Beeches' complaint alleged that Leaf River operated a pulp mill that dumped pollutants into the Leaf and Pascagoula Rivers. The Beeches pursued their claim under the theories of public and private nuisance, negligence, absolute liability for ultrahazardous activity, trespass, and outrageous conduct. The Williamses filed a similar complaint on the same day, in the same court. The court consolidated the two actions on May 11, 1993, per the plaintiffs' motion.

¶3. On June 11, 1993, the Circuit Court of George County entered an order changing venue from the Circuit Court of George County to the Circuit Court of Harrison County, pursuant to a motion filed by the defendants on March 22, 1993. The Circuit Court of Harrison County issued an order vacating orders previously entered by the Circuit Court of George County, including the order changing venue, on June 23, 1993. On June 20, the Circuit Court of Harrison County entered an order changing venue. Both courts cited the community bias against the defendants in the case due to the large number of plaintiffs involved in similar actions residing in the county and the substantial media attention generated by the case in George County. Voir dire began on June 22, 1993.

¶4. On June 23, 1993, the Circuit Court of Harrison County entered an order excluding the testimony of plaintiffs' witness Elmo R. Zumwalt, Jr., finding that he was not qualified to testify as an expert regarding dioxin, the pulp and paper industry, or government activities, and that his testimony would be irrelevant and prejudicial. Also entered on June 23 was an order granting partial summary judgment to the plaintiffs on the issue of interference with the plaintiffs' riparian rights, because the court found that the plaintiffs had no riparian rights in the rivers. The court also granted summary judgment for defendants Warren Richardson and Acker Smith on June 23. On June 24, 1993, the court granted summary judgment for the defendants on plaintiffs' claims for mental and emotional distress and fear of future disease. On July 8, the jury submitted a verdict in favor of the defendants on all remaining claims. The court entered judgment in favor of the defendants on all claims on August 9, 1993. Beech et al. filed a motion for a new trial, which the circuit court denied on December 16, 1993. The plaintiffs filed their notice of appeal to this Court, assigning as error the following:

**I. THE TRIAL COURT ERRONEOUSLY CHANGED TRIAL VENUE.**

**II. THE TRIAL COURT ERRONEOUSLY LIMITED PLAINTIFFS' EXPERT TESTIMONY.**

## STATEMENT OF THE LAW

## Standard of Review

¶5.

> An application for a change of venue is addressed to the discretion of the trial judge, and his ruling thereon will not be disturbed on appeal unless it clearly appears that there has been an abuse of discretion or that the discretion has not been justly and properly exercised under the circumstances of the case.

*Mississippi State Highway Comm'n v. Rogers*, 128 So.2d 353, 358 (Miss. 1961) (Kyle).

> The relevancy and admissibility of evidence are largely within the discretion of the trial court and reversal may be had only where that discretion has been abused. *Johnston v. State*, 567 So.2d 237, 238 (Miss.1990), citing *Hentz v. State*, 542 So.2d 914, 917 (Miss.1989); *Monk v. State*, 532 So.2d 592, 599 (Miss.1988). Unless the trial judge's discretion is so abused as to be prejudicial to a party, this Court will not reverse his ruling. *Shearer v. State*, 423 So.2d 824, 826 (Miss.1982), citing *Page v. State*, 295 So.2d 279 (Miss.1974). The discretion of the trial judge must be exercised within the boundaries of the Mississippi Rules of Evidence. *Johnston*, 567 So.2d at 238. *See* M.R.E. 103(a), 104(a).

*Century 21 Deep South Properties, Ltd. v. Corson*, 612 So.2d 359, 369 (Miss. 1992). "The decision whether an expert is qualified rests in the sound discretion of the trial court." *T.K. Stanley, Inc. v. Cason*, 614 So.2d 942, 951 (Miss. 1992) (citing *Smith v. State*, 530 So.2d 155, 162 (Miss.1988)).

## I.

## THE TRIAL COURT ERRONEOUSLY CHANGED TRIAL VENUE.

¶6. Beech et al. claim that the court abused its discretion in changing venue. They first assert that the defendant's petition for change of venue was not in proper form, because it wasn't signed by one of the parties, and was not filed in a timely fashion. The court granted the defendants' motion for change of venue pursuant to Miss. Code Ann. § 11-11-51. That statute reads as follows:

> When either party to any civil action in the circuit court shall desire to change the venue, he shall present to the court, or the judge of the district, a petition setting forth under oath that he has good reason to believe, and does believe that, from the undue influence of the adverse party, prejudice existing in the public mind, or for some other sufficient cause to be stated in the petition, he cannot obtain a fair and impartial trial in the county where the action is pending, and that the application is made as soon as convenient after being advised of such undue influence, prejudice, or other cause, and not to delay the trial or to vex or harass the adverse party. On reasonable notice in writing to the adverse party of the time and place of making the application, if made in vacation, the court, if in term time, or the judge in vacation, shall hear the parties and examine the evidence which either may adduce, and may award a change of venue to some convenient county where an impartial trial may be had, and, if practicable, in which the circuit court may next be held. If made in vacation, the order shall be indorsed on the petition and directed to the clerk, who shall file the same with the papers in the suit.

Miss. Code Ann. § 11-11-51. The defendants filed their motion for change of venue on March 22, 1993, nearly two years after the action was commenced in the Circuit Court of George County. However, the motion was filed a full three months before the trial began on June 22, 1993. This Court has previously held that a change of venue motion filed within one month of trial should have been granted. *Mississippi State Highway Comm'n*, 128 So.2d at 355-58. The trial in this case was not delayed as a result of the change of venue, and a plain reading of § 11-11-51 clearly shows that the requirement of a timely filing is intended to prevent a party from filing a change of venue motion simply as a delay tactic. Since part of the basis of the change of venue motion was the amount of pre-trial publicity, it would have been premature to file such a motion so long before the trial that the effects of the publicity would have been too remote for a determination of resulting prejudice in the community. Based upon all of these facts, it cannot be said that the change of venue motion filed three months before the trial, and not resulting in any trial delay, was untimely.

¶7. Plaintiffs' argument that the change of venue motion was improper because it lacked the parties' signatures is also without merit. The petition for change of venue was signed by Lee Davis Thames, attorney for the defendants. There is no requirement that a petition for change of venue be signed by the party himself and not by the attorney. Beech et al. point to *Lane v. Woodland Hills Baptist Church*, 285 So.2d 901, 905 (Miss. 1973), in which this Court held that the appellants in a will contest were not bound by their attorney's stipulation which would have surrendered their rights to any relief. While this Court determined that an attorney generally has no authority to bind his client as to matters of law, this Court also recognized that in certain cases, an attorney may have the authority to do so if "such admission or stipulation is a proper step in the accomplishment of the purpose for which he is employed." *Id*. (citations omitted). The current case differs from *Lane*, because it does not involve a stipulation or admission, and rather than waiving any rights, the attorney for Leaf River asserted the right to a fair trial in a less biased venue.

¶8. Beech et al. also point to *Vance v. Vance*, 20 So.2d 825, 825-27 (Miss. 1945), in which this Court stated, "The rule is that if a statute specifically prescribes who shall make a certain affidavit, it can be made by none other than the person specified, although there is nothing in the language of the statute to show that its designation was intended to be exclusive." *Id*. at 826 (citation omitted) (remanding a divorce case in order for the party to personally sign the complaint for divorce, which had previously been signed by his attorney). Beech et al. argue that because § 11-11-51 states that the party shall present the change of venue petition under oath to the court, then the petition should have been signed by the party and not the attorney. However, in this case, the defendant corporation, being a figural entity, obviously cannot sign a petition. An attorney for a corporation may act as its agent in receiving service of process under Mississippi's long-arm statute, and a corporation's attorney may sign a conveyance to transfer the corporation's land. Miss. Code Ann. §§ 13-3-57 and 89-1-21. It should therefore be sufficient for the corporation's attorney to act as its agent in signing a change of venue petition.

¶9. Plaintiffs also argue that the court should have conducted voir dire and heard argument and evidence from the plaintiffs before its ruling, instead of relying solely on the exhibits attached to the defendants' petition. However, this Court has previously recognized the ineffectiveness of voir dire in detecting juror bias created by pre-trial publicity. *Fisher v. State*, 481 So.2d 203, 220-21 (Miss. 1985). Since jurors are aware that they are supposed to be impartial, they are unlikely to reveal any bias, even if they recognize it in themselves. *Id*. The plaintiffs filed a brief in response to the change

of venue petition, so they were not denied the opportunity to be heard. The defendants presented sufficient evidence in the form of affidavits, depositions, newspaper articles, videotapes of news stories, and other exhibits to support their petition for change of venue. The evidence showed that of the 8,909 residents of George County eligible for jury duty, 750 were plaintiffs in dioxin cases brought against the defendants in this case. Even more were potential class members in a class action against the same defendants certified in the Circuit Court of Jackson County in October of 1992, **Hubbard v. Leaf River Forest Products, Inc.**, which was vacated in October of 1993, after this trial was finished. One exhibit listed over three hundred news articles printed on the dioxin cases in local newspapers between November of 1989 and February of 1993. Taking these numbers into consideration, the trial court reasonably determined that the excessive pre-trial publicity and large number of potential jurors involved in similar litigation would prevent the defendants from receiving a fair trial in George County.

¶10. Beech et al. also complain that the court failed to consider the alternatives to change of venue set out in **Hudson v. Taleff**, 546 So.2d 359, 363 (Miss. 1989). In **Hudson** this Court stated that the unfair trial resulting from the "statistical aberration" of the venire makeup could have been avoided by the trial court granting additional peremptory challenges, increasing the size of the venire, or sustaining challenges for cause. *Id*. (quoting **Mhoon v. State**, 464 So.2d 77, 81 (Miss. 1985)). However, change of venue was not even mentioned in **Hudson**, so trial courts are certainly not bound by that case to consider alternatives to change of venue. The language in **Hudson** clearly creates mere suggestions for alleviating venire bias in a large county. *Id*. **Hudson** does not require use of those suggestions, especially in a lesser populated county such as George County. Plaintiffs also rely on **Hudson** in arguing that Jackson County would have been a more appropriate county for change of venue purposes. However, their reliance is misplaced, because **Hudson** merely says that larger counties are more able to use the suggested means of alleviating venire bias; it does not remotely suggest that changes of venue should be limited to transfers to larger counties for use of those means.

¶11. The change of venue was reasonable in light of the extensive pretrial publicity and the citizen bias against the defendants created by the number of George County residents who have brought similar dioxin cases against the defendants. These bases for change of venue were properly presented to the trial court through Leaf River's petition. Upon proper consideration, the trial court determined that the evidence supported the defendants' request for change of venue. The trial court's decision cannot be said to have been an abuse of discretion, so we do not reverse based upon this assignment of error.

## II.

## THE TRIAL COURT ERRONEOUSLY LIMITED PLAINTIFFS' EXPERT TESTIMONY.

### A.

### Admiral Zumwalt

¶12. Beech et al. argue that the trial court abused its discretion in wholly excluding the testimony of their witness Admiral Zumwalt. Plaintiffs sought to introduce Zumwalt's testimony as an expert in the areas of 1) the relationship between dioxin and the pulp and paper industry, 2) governmental

regulation of dioxin, 3) lobbying efforts by the pulp and paper industry regarding dioxin, 4) the public's perception of dioxin, 5) his personal experiences regarding dioxin-based Agent Orange used in Vietnam, and 6) the health effects of dioxin. The trial court entered an order on June 23, 1993, granting the defendants' motion in limine to exclude Zumwalt's testimony, finding that he was not qualified to testify as an expert in any of these areas, and that his testimony regarding the death of his son as a result of exposure to Agent Orange would be irrelevant and prejudicial.

¶13. Miss. R. Evid. 702 governs expert testimony. Rule 702 reads, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Miss. R. Evid. 702. Plaintiffs assert that Admiral Zumwalt should have been allowed to testify as an expert regarding the effects of dioxin on people, based upon his experience working on a study panel for the United States Veterans Administration. According to Zumwalt's deposition, he had no formal training in any of the areas in which the plaintiffs offered his testimony as an expert. His knowledge regarding dioxin and its health effects was based upon other people's studies that Zumwalt had read and upon conversations that he had with scientists. Zumwalt's participation on the study panel for the Veterans Administration was in the capacity of a layman member, involved in collecting studies, publications, and other documents related to the use of Agent Orange in Vietnam. Zumwalt had no understanding of the manufacturing process in the pulp and paper industry, and his knowledge regarding governmental regulation of dioxin was based upon hearsay. Based upon his deposition testimony, it cannot be said that the trial court abused its discretion by refusing to allow Zumwalt to testify as an expert.

## B.

## Dr. Maggio

¶14. Beech et al. also complain that the trial court erred in excluding the testimony of their witness Dr. Maggio. Dr. Maggio is a psychiatrist who would have given testimony regarding the plaintiffs' fear, apprehension and grief resulting from their alleged exposure to dioxin. This testimony went toward proving plaintiffs' claims for mental and emotional distress and fear of future disease. However, since the trial court granted the defendants summary judgment on those claims, the court instructed the parties that the testimony of Dr. Maggio would not be allowed. Mississippi has not recognized a cause of action for fear of future disease. *Leaf River Forest Products, Inc. v. Ferguson*, 662 So.2d 648, 658 (Miss. 1995). Furthermore, the plaintiffs' failure to produce any proof through blood tests or other medical evidence was fatal to their claims for mental and emotional distress and fear of future disease. As a result, any testimony regarding these claims became irrelevant for purposes of the trial. The judge therefore properly excluded the testimony of Dr. Maggio.

## C.

## Dr. Hallett

¶15. Appellants Beech et al. also claim that the trial court abused its discretion by limiting the testimony of their expert witness Dr. Hallett. They claim that excluding Dr. Hallett's testimony regarding his work experience with dioxin and its harmful effects cast doubt on Dr. Hallett's qualifications in the minds of the jury. The trial court limited Hallett's testimony regarding an

evacuation due to toxic chemical exposure in Niagara Falls, New York, because it was not relevant to determination of his expertise. Defendants' objection based upon irrelevancy was also sustained regarding Hallett's testimony during voir dire on an episode of mercury contamination downstream from a pulp mill in Canada. Similarly, the trial court sustained the defendants' objection to Hallett's specific testimony during voir dire regarding bioaccumulation of dioxin, because it was irrelevant for purposes of tendering Hallett as an expert. The trial court later refused to admit the proffered testimony of Hallett on bioaccumulation, the tendency of an organic chemical to move from water into living things and up the food chain. All of this testimony was properly excluded as irrelevant during voir dire of the expert witness, because it went beyond determination of his qualifications. Furthermore, Hallett's specific testimony concerning an episode of biocontamination in New York or of mercury contamination in Canada had no relevance whatsoever to the proceedings at hand, especially since mercury contamination was not alleged in this case. Hallett's testimony regarding bioaccumulation of dioxin had no relevance to the plaintiffs' remaining claims of property damage at trial, and was also properly excluded. Therefore, the trial court did not abuse its discretion in limiting Hallett's testimony on these subjects.

¶16. Beech et al. also argue that the trial court erred in refusing to allow Dr. Hallett to testify regarding Exhibit D-256 during redirect. However, that exhibit was not previously introduced during direct or cross-examination, and so was not proper subject matter for redirect examination. *See Weeks v. State*, 493 So.2d 1280, 1285 (Miss. 1986) (re-direct should be limited to matters inquired into during cross-examination) (citing *Cole v. Tullos*, 90 So.2d 32, 34-35 (Miss. 1956)). Hallett was allowed to testify regarding the subject matter of Exhibit D-256, dioxin levels at Mineral Creek, by using Exhibit D-269 which had been discussed on cross-examination. Therefore, the trial court did not abuse its discretion in refusing to allow Hallett's testimony regarding Exhibit D-256.

### D.

### Dr. Olson

¶17. Plaintiffs also complain that limiting Dr. Olson's explanation of how dioxin affects the body unreasonably hampered their case. The trial court did limit Olson's testimony regarding the effects of dioxin on the human body. However, as previously stated regarding Dr. Hallett's testimony, any evidence relating to the effects of dioxin on the human body became irrelevant upon the trial court's granting summary judgment to the defendants on the claims for emotional and mental distress and fear of future disease. Again, the trial court did not abuse its discretion in refusing to admit this proffered line of testimony.

### CONCLUSION

¶18. The trial court did not err in transferring venue to Harrison County in light of the community bias against Leaf River in George County. Similarly, the trial court did not abuse its discretion by limiting the plaintiffs' expert witness testimony. Therefore, we must give deference to the trial court's rulings on venue and admissibility of evidence and affirm the lower court's decision.

¶19. **AFFIRMED.**

**LEE, C.J., PRATHER, P.J., PITTMAN, BANKS, ROBERTS, SMITH AND MILLS, JJ.,**

**CONCUR. McRAE, J., CONCURS IN RESULT ONLY.**