755 So.2d 511 (1999)
Kent GREER, Appellant,
v.
STATE of Mississippi, Appellee.
No. 98-KA-00013-COA.
Court of Appeals of Mississippi.
June 22, 1999.
Rehearing Denied September 28, 1999.
Certiorari Denied February 17, 2000.
*513 Edward Blackmon, Canton, Attorney for Appellant.
Office of the Attorney General by Dewitt T. Allred, III, Attorney for Appellee.
BEFORE KING, P.J., PAYNE, AND THOMAS, JJ.
THOMAS, J., for the Court:
¶ 1. Kent Greer appeals his conviction of aggravated assault and murder, raising the following issues as error:
I. THE COURT ERRED IN QUESTIONING A JUROR ABOUT CONVERSATIONS HE MAY HAVE HAD WITH A MEMBER OF THE DEFENDANT'S FAMILY DURING A COURT RECESS PRIOR TO THE START OF THE STATE'S CASE THUS PLACING UPON THE JUROR A DUTY OF CASING A GUILTY VERDICT IN ORDER *514 TO PROVE HIS "IMPARTIALITY."
II. THE COURT COMMITTED REVERSIBLE ERROR IN ALLOWING DEPUTY SHERIFF MARCH TO TESTIFY AS A WEAPONS EXPERT.
III. THE COURT ERRED IN ALLOWING THE INTRODUCTION OF A JACK WHICH WAS NOT A WEAPON USED BY THE DEFENDANT.
IV. REVERSIBLE ERROR WAS COMMITTED BY THE COURT IN DENYING INSTRUCTION D-4.
V. THE COURT COMMITTED REVERSIBLE ERROR IN DENYING DEFENDANT'S MOTION FOR A MISTRIAL IN RESPONSE TO PREJUDICIAL REMARKS MADE BY THE STATE DURING CLOSING.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. On November 9, 1996, Kent Greer along with Frederick Russell and Tony Granderson arrived at an establishment called Mary Walden's in Lexington, Mississippi. Greer exchanged some words with Tonnie Kimbrough and his friends when Kimbrough or another person swung a truck door in front of Greer just as he was passing by. Greer and his friends went into Walden's and shot pool. Shortly thereafter, Greer left Walden's. What happened after that depends on which witness was telling the story. Most of the State's witnesses testified that Greer hit Richard Smith, a friend of Kimbrough's, over the head with a beer bottle. Thereafter, a fight ensued. State's witnesses testified that friends of Greer's, not Greer himself, started hitting Richard Smith over the head with a tire jack. After the fight started, Kimbrough retrieved a .22 caliber rifle from his vehicle and began firing, apparently in all directions. Many witnesses claimed that Kimbrough's purpose in firing was to break up what essentially had become a riot. Greer left the scene. State's witnesses testified that Greer returned several minutes later carrying an A-K 47 assault rifle. He then fired several shots into Richard Smith who was on the ground. By that time, Kimbrough had returned to his truck. Greer fired several shots into Kimbrough as he was getting into a truck.
¶ 4. Defense witnesses told a slightly different story. Witnesses testified that as soon as Greer exited Walden's, Richard Smith took off his belt buckle and started attacking Greer and his friends. Kimbrough's friends attacked Greer with a beer bottle. Kimbrough was shooting into the crowd. Jessie Walden, who was attempting to break up the fight, was shot by Kimbrough. Kimbrough returned to his truck. Allegedly, Kimbrough had stopped firing his .22 because it was jammed, a fact which was later ascertained after law enforcement arrived on the scene. Greer then fired his A-K 47 assault rifle a number of times into the truck, striking Kimbrough.
¶ 5. Therefore, this present case arises out of a fight characterized by a shooting spree which left Tonnie Kimbrough dead, Richard Smith with serious permanent injuries, and Jessie Walden as a quadriplegic.
¶ 6. Greer was tried for the murder of Tommie Kimbrough and aggravated assault upon Richard Smith. The jury found Greer guilty on both counts.

ANALYSIS

I.

THE COURT ERRED IN QUESTIONING A JUROR ABOUT CONVERSATIONS HE MAY HAVE HAD WITH A MEMBER OF THE DEFENDANT'S FAMILY DURING A COURT RECESS PRIOR TO THE START OF THE STATE'S CASE THUS PLACING UPON THE JUROR A DUTY OF CASTING A GUILTY VERDICT IN ORDER TO PROVE HIS "IMPARTIALITY."
¶ 7. Just prior to the State putting on its case, but subsequent to jury selection, *515 the victim witness coordinator advised the district attorney that one of the jurors had been seen standing near a family member of the defendant outside the courthouse. The trial judge called the coordinator into the courtroom so she could tell what she saw and be questioned by both the State and the defense. She stated that when she came to the courthouse after lunch, she saw a juror standing with the family members of the defendant. The backs of the juror and the family members were toward her and when she got near them she did not see them talking. She stated that the juror was smoking a cigarette. The coordinator approached the juror and told him that he needed to go back in the courtroom. The juror responded that he did not say anything and he did not even know who they were.
¶ 8. After the coordinator gave her side of the incident, the trial judge indicated that he would be calling in the juror to question him on the incident. Defense counsel stated that the singling out of this juror would unquestionably make this juror feel like he did something or somebody believed that he did something wrong. The trial judge brought in the juror. The juror stated that he had just finished lunch and went to have a cigarette. He did not know the relatives, he did not talk to anyone, and he did not overhear them talking about the case. After the juror left, the defense moved for a mistrial, which was denied.
¶ 9. Greer argues that the effect on the juror of being summoned and singled out was to plant in the juror's mind that he would be carefully watched by the court as well as the State, thus prejudicing his ability to decide the case by being able to concentrate solely on the evidence. The trial court's action thus biased the juror, and for the State and the court to take the position that their questioning of this juror did not "influence him one way or the other" is somewhat naive.
¶ 10. "[W]henever there is a question concerning outside influencing of a jury, the trial judge himself ought to examine the jury carefully to ensure that the jury's deliberations are based on the evidence produced at trial and not extraneous matters." Williamson v. State, 512 So.2d 868, 882 (Miss.1987) (overruled on other grounds). "The most fundamental and sacred rights secured for the criminal defendant is his right to a trial before a fair and impartial jury." Id. at 881 (citing Johnson v. State, 476 So.2d 1195, 1209 (Miss.1985)). "Because of this, once the jury is empaneled, all cautionary measures possible should be taken to prevent extraneous or outside influence from reaching the jury in an effort to ensure impartiality and to ensure that the accused receives a fair trial. The jury's verdict must be based on the evidence before them." Williamson, 512 So.2d at 882. "Outside influences must be eliminated if possible and minimized otherwise or the verdict rendered is questionable and a mistrial is appropriate." Id. (citing Fuselier v. State, 468 So.2d 45 (Miss.1985)).
¶ 11. We are sure that had the juror not been interrogated about his involvement or lack of involvement with the defendant's family, on appeal the argument would be that Greer was denied his right to a fair and impartial jury under the Sixth Amendment. "The mere possibility that the jurors may have been influenced by some extraneous matter is not enough to set aside a verdict." Allman v. State, 571 So.2d 244, 247 (citing Irving v. State, 361 So.2d 1360, 1368 (Miss.1978)). We find no merit to Greer's first assignment of error.

II.

THE COURT COMMITTED REVERSIBLE ERROR IN ALLOWING DEPUTY SHERIFF MARCH TO TESTIFY AS A WEAPONS EXPERT.
¶ 12. The prosecution's first witness was Sheriff's Deputy Roosevelt March, *516 who investigated the scene after the shootings. During cross-examination, defense counsel established that Greer had not been charged with the shooting of Jessie Walden and that Kimbrough's .22 was the only weapon found at the scene. Defense counsel asked if there was any evidence of gunshots being fired into the club. March testified that one bullet came through the window, but he was unable to find it as it went into the wall.
Defense: What size hole was it?
Answer: It was a pretty big hole. It was shot through by a large caliber gun.
Defense: What size? What size hole was it?
Answer: I didn't measure the hole.
Defense: Well, that big, that big, or what? (Demonstrating)
Answer: About thumb size.
Defense: Thumb size?
Answer: Right.
Defense: And that's a large caliber weapon?
Answer: Correct.
¶ 13. On re-direct, the prosecution asked, "So the hole ... [was] larger than would be caused by a .22 caliber weapon?" The defense objected stating that the prosecution was leading the witness and the trial court sustained. The prosecution asked what size was the bullet hole and March replied, "Large hole, about thumb size." The prosecution then asked the witness how large a hole would be caused by a .22 and the defense objected on the ground that the witness had not been qualified as "an expert on determining what size holes would be left by a weapon...." The defense objection was overruled. March testified that the hole was smaller than his little finger. The prosecution then took an exhibit of a .22 round and asked if the size of the hole was the same as the round. March replied the hole was much larger.
¶ 14. When "the defense attorney inquires into a subject on cross-examination of the State's witness, the prosecutor on rebuttal is unquestionably entitled to elaborate on the matter." Hart v. State, 639 So.2d 1313, 1317 (Miss.1994) (citations omitted). The trial court has broad discretion in allowing or disallowing redirect examination of witnesses. West v. State, 463 So.2d 1048, 1055 (Miss.1985). It is clear from the above that the defense opened the door to the questions asked and the answers given on re-direct. This argument has no merit.

III.

THE COURT ERRED IN ALLOWING THE INTRODUCTION OF A JACK WHICH WAS NOT A WEAPON USED BY THE DEFENDANT.
¶ 15. During trial testimony was brought forth that established that during the melee one of the participants used a tire jack as a weapon, particularly on Richard Smith. The defense objected to the introduction of the tire jack stating that it could not be established that Greer used the jack. The prosecution countered that the introduction of the tire jack was not prejudicial because Richard Smith clearly testified that he did not know who used the "weapon." The court overruled the objection. Throughout the trial several witnesses testified to seeing the "weapon." All the witnesses but one stated they did not know who was using the jack. One witness testified that another individual, Frederick Russell, not Greer, was using the tire jack the evening in question.
¶ 16. Greer argues that the introduction of this weapon was neither relevant nor material. While this may be true, Greer has not shown this Court how he could be prejudiced by the introduction of a tire jack which was identified as being used by another individual. We cannot find any prejudice that resulted to Greer by allowing the tire jack into evidence and how another man using this weapon at the *517 scene is any more then harmless error. Greer's third issue has no merit.

IV.

REVERSIBLE ERROR WAS COMMITTED BY THE COURT IN DENYING INSTRUCTION D-4.
¶ 17. The defense asked for jury instruction D-4, which was a self-defense of others instruction. The trial court denied this instruction, but granted two self-defense instructions. Greer puts forth a rather novel argument that because the trial judge granted the self-defense instructions, she should have allowed his self-defense of others instruction.
¶ 18. In Mississippi we provide that an instruction should be submitted to the jury when the evidence, if believed by the jury, could result in resolution of the issue in favor of the party requesting the instruction. Only where the evidence is so one-sided that no reasonable juror could find for the requesting party on the issue at hand may the trial court deny an instruction. Phillips v. State, 493 So.2d 350, 353-54 (Miss.1986). The question for this Court is whether there was evidence sufficient that a rational jury might have found for Greer on the defense of others issue.
¶ 19. The State argues that the record is void of any factual support for the finding that Greer shot anyone in self-defense; therefore, a defense of others certainly should not have been allowed. We agree. In an over abundance of caution, the trial judge here granted a self-defense instruction; however, nowhere in the record could such a conclusion be found. All the witnesses, including Greer's own witnesses, testified that there was a significant passage of time between Kimbrough's shooting spree and Greer's shootings of Kimbrough and Smith. When Greer shot Kimbrough, Kimbrough had already put the .22 behind his back seat and was getting in, or was already in, his truck. When Greer shot Smith, Smith was lying on the ground. Based on the foregoing, Greer was not entitled to a jury charge on defense of others because there was no evidence he was defending others when he shot Smith and Kimbrough.

V.

THE COURT COMMITTED REVERSIBLE ERROR IN DENYING DEFENDANT'S MOTION FOR A MISTRIAL IN RESPONSE TO PREJUDICIAL REMARKS MADE BY THE STATE DURING CLOSING.
¶ 20. During its closing argument, the State made the following remarks to the jury:
Was there any threat from this man [Richard Smith]? Good God! There wasn't any danger to Kent Greer at all. He killed him because he's mean. He killed him because he wanted to. He killed him because of his pride, and he said, "I'm the Man! I'm the Hero!" And if you turn him loose, he's going to be right. Boy, y'all are going to make him the hero and the man! And you don't even have to give him his gun back, because he's still got that!
If you can justify gut shooting a man who is almost unconscious on the ground and find him not guilty, if Richard Smith can't get justice for that, then it ain't no justice to be had in this county.
¶ 21. Greer argues that this portion of the prosecution's argument exceeded what is proper in closing. He states that on the basis of this excerpt of the prosecution's argument, the jury only had one choice. Namely, there was no justice in the country unless it found him guilty.
¶ 22. Counsel is limited in his argument to facts introduced in evidence, deductions and conclusions he may reasonably draw therefrom, and the application of the law to the facts. Ivy v. State, 589 So.2d 1263, 1266 (Miss.1991); Davis v. State, 530 So.2d 694, 701-02 (Miss.1988). Parties are given great latitude in making *518 their closing arguments. Dunaway v. State, 551 So.2d 162, 163 (Miss.1989).
¶ 23. "Trial courts are allowed considerable discretion to determine whether or not the conduct of an attorney in argument is so prejudicial that an objection should be sustained or a new trial granted." Harvey v. State, 666 So.2d 798, 801 (Miss.1995) (citing Edmond v. State, 312 So.2d 702, 705 (Miss.1975)). "The test to make such determination is whether the natural and probable effect of improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by prejudice." Harvey, 666 So.2d at 801 (citing Johnson v. State, 596 So.2d 865, 869 (Miss.1992)).
¶ 24. "Prosecutors are afforded the right to argue anything in the State's closing argument that was presented as evidence." Hanner v. State, 465 So.2d 306, 311 (Miss.1985) (citations omitted). "However, arguing statements of fact which are not in evidence or necessarily inferable from it and which are prejudicial to the defendant is error." Blue v. State, 674 So.2d 1184, 1214 (Miss.1996) (citing Tubb v. State, 217 Miss. 741, 64 So.2d 911 (1953)).
Counsel was not required to be logical in argument; he is not required to draw sound conclusions, or to have a perfect argument measured by logical and rhetorical rules; his function is to draw conclusions and inferences from evidence on behalf of his client in whatever he deems proper, so long as he does not become abusive and go outside the confines of the record.
Johnson v. State, 416 So.2d 383, 391 (Miss. 1982) (citation omitted).
¶ 25. A conviction will not be reversed due to an improper remark during closing argument unless this Court is convinced that the remark influenced the jury and contributed to the verdict. In the present case, we are not convinced that the comment by the district attorney served to prejudice the jury and influence the verdict. We hold this issue is without merit.
¶ 26. THE JUDGMENT OF THE CIRCUIT COURT OF HOLMES COUNTY OF CONVICTION OF COUNT I AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS; COUNT II MURDER AND SENTENCE OF LIFE IMPRISONMENT TO RUN CONSECUTIVELY TO SENTENCE IN COUNT I IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., COLEMAN, DIAZ, IRVING, LEE, AND PAYNE, JJ., CONCUR.
BRIDGES, J., NOT PARTICIPATING.