977 So.2d 353 (2007)
James Robert GOODIN, Appellant
v.
STATE of Mississippi, Appellee.
No. 2006-KA-00756-COA.
Court of Appeals of Mississippi.
May 1, 2007.
Rehearing Denied October 9, 2007.
*355 John Carl Helmert, attorney for appellant.
Office of the Attorney General by Billy L. Gore, attorney for appellee.
Before KING, C.J., CHANDLER and ISHEE, JJ.
ISHEE, J., for the Court.
¶ 1. James Robert Goodin was convicted of rape and sexual battery in the Circuit Court of Lee County. He was sentenced to serve life imprisonment for rape and thirty years for sexual battery, with both sentences to run concurrently, in the custody of the Mississippi Department of Corrections, and to pay a fine in the amount of $5,000 and court costs. Goodin's motion for judgment notwithstanding the verdict or, in the alternative, a new trial was denied by the trial court. Aggrieved, Goodin appeals. He asserts the following issues for our review:
I. Whether the trial court erred by not instructing the jury that it must find that the alleged victim resisted a forcible rape with all reasonable force.
II. Whether the evidence presented at trial was legally insufficient to allow a conviction of rape.
III. Whether the trial court erred by allowing a substantive amendment of the indictment to change the charge from rape to sexual battery.
IV. Whether the trial court erred by allowing improper redirect examination of Donna Franks.
Finding no error, we affirm.

FACTS
¶ 2. On April 16, 2004, Goodin was indicted by a Lee County grand jury for two counts of forcibly raping T.L. Specifically, Count I of the indictment alleged that Goodin did "wilfully, unlawfully and feloniously against her will, ravish and carnally know T.L., a female human being . . . by forcibly inserting his penis inside [her] vagina." Count II of the indictment alleged that Goodin did "wilfully, unlawfully and feloniously against her will rape, ravish and carnally know T.L., a female human being . . . by forcibly inserting his penis inside [her] rectum." On February 8, 2006, the State filed a motion and appeared before the court on the said motion to strike the words "rape, ravish and" from Count II of the indictment, asserting that the words were mere surplusage. The court overruled the State's motion, finding that it was not timely.
¶ 3. The jury trial began on February 8, 2006. Officer Donna Franks, a criminal investigator with the Lee County Sheriff's Department, testified that she was assigned to investigate T.L.'s rape. She further testified that she interviewed T.L., who had a learning disability, and that T.L.'s story was always consistent. During cross-examination, Goodin's defense counsel asked Officer Franks whether a rape kit was performed on T.L. Officer Franks replied that a medical examination was performed, but not a rape kit. On redirect, Officer Franks testified that she presented the results of the exam, which revealed anal and vaginal penetration, to the grand jury, who subsequently returned with the indictment against Goodin.
¶ 4. Chris Hopkins testified that he caught Goodin twice "messing with [T.L.]" Hopkins explained that the first time he caught Goodin, Goodin was in a shed alone with T.L. and Hopkins could not open the door. When Hopkins was finally able to open the door, Goodin was buttoning up his pants and buckling his belt. Hopkins further explained that the second time he caught Goodin, Goodin was in the bedroom of the trailer where they lived "laying in *356 the bed with [T.L.] messing with her." According to Hopkins, Goodin threatened him and beat him badly to prevent him from telling "the authorities at school."
¶ 5. V.H., T.L.'s twenty-year-old sister, testified that, when Hopkins told their mother about what happened between Goodin and T.L. in the shed, Goodin took a baseball bat and beat Hopkins with it. V.H. also testified that, at night on five or six occasions, Goodin came into the bedroom that she shared with T.L., and took T.L. back to his bedroom. V.H. further testified that on one occasion, she saw T.L. lying on the bed in her mother and stepfather's bedroom, right beside Goodin.
¶ 6. T.L., who was twenty-four at the time of the trial, testified that she took special education classes and that she could not read or write. She further testified that Goodin "messed" with her and that he stuck his penis in her mouth, between her legs and inside of her, between her breasts, and inside her "behind." According to T.L., Goodin did this to her on numerous occasions, always at night, either in Goodin's bedroom, the kitchen, or the living room. She testified that Goodin had been doing it to her since she was twelve.
¶ 7. Regarding the element of force, T.L. testified that she was unable to get away from Goodin when he was on top of her. T.L. also testified that, when she told Goodin to stop, he ignored her. According to T.L., Goodin forced her to take her clothes off, although he did not beat her into doing so. T.L. further testified that she never cried out when Goodin "messed" with her because she was scared.
¶ 8. Goodin testified that he never had sex with T.L. or touched her inappropriately. He explained that he never had the opportunity to be sexually involved with T.L. because he was never alone with her, as he worked all day and during the night, his wife and the other children were always there.
¶ 9. After the State finally rested, the court heard objections to jury instructions. The court sua sponte addressed the problem with Count II of the indictment, namely, that Count II charged Goodin with rape, but stated that Goodin inserted his penis inside the rectum, not the vagina, of the victim. The State agreed with the court that Count II was inconsistent in that the act of rape involves penetration of the vaginal area, while sexual battery required insertion of the penis into any area against the victim's will. Consequently, the State requested that the word "rape" be removed from Count II so that the indictment would fit the statutory language for sexual battery. Goodin asserted that the indictment was handed down two years before the trial and that the State had had plenty of opportunities to amend the indictment. Although the court agreed with Goodin that it was unfair to "change the name of the game" on the day of the trial, the court was reluctant to let the jury deliberate Count II for rape when the statutory definition of rape did not include what was charged in Count II, i.e., anal penetration. Consequently, the trial court allowed the State to strike the word "rape" from the jury instructions regarding Count II.
¶ 10. On February 9, 2006, the jury found Goodin guilty of Count I and Count II. Goodin was sentenced to serve life for Count I and thirty years for Count II, with both sentences to run concurrently, in the custody of the Mississippi Department of Corrections, and to pay a fine of $5,000 and court costs. Goodin's motion for judgment notwithstanding the verdict or, in the alternative, a new trial was denied by the trial court.

*357 ISSUES AND ANALYSIS
I. Whether the trial court erred by not instructing the jury that it must find that the alleged victim resisted a forcible rape with all reasonable force.
¶ 11. "In determining whether error lies in the manner in which the jury was instructed, the various requested instructions are not considered in isolation. Rather, the instructions actually given must be read as a whole." Sheffield v. State, 844 So.2d 519, 524(¶ 12) (Miss.Ct. App.2003) (citing Turner v. State, 721 So.2d 642, 648(¶ 21) (Miss.1998)). No reversible error will be found if the instructions fairly announce the law of the case and create no injustice. Id. (citing Coleman v. State, 697 So.2d 777, 782 (Miss. 1997)). Although a defendant is entitled to jury instructions which present his theory of the case, "this entitlement is limited to instructions that correctly state the law, are not covered fairly elsewhere in the instructions, and have a foundation in the evidence." Sproles v. State, 815 So.2d 451, 454(¶ 9) (Miss.Ct.App.2002) (citing Heidel v. State, 587 So.2d 835, 842 (Miss.1991)).
¶ 12. Goodin asserts that the trial court erred in refusing to instruct the jury that, in order to find him guilty of rape, it must find that Goodin had sexual intercourse with T.L. "despite all reasonable available physical resistance on her part to the use of force." The trial court struck the aforementioned language from requested jury instruction D-8, and granted jury instruction C-8, which provided in relevant part the following:
[I]n order to find the defendant, James Robert Goodin, guilty of the crime of rape, you must find from the evidence in this case, beyond a reasonable doubt, that:
1) T.L. was a human female;
2) That the defendant had sexual intercourse with T.L. by actual penetration of her private parts, against her will.
3) Between the dates of June 1, 2002 and May 31, 2003.
¶ 13. Goodin argues that jury instruction C-8 failed to present the jury with the defense of consent through lack of resistance, and that no other instruction informed the jury of the requisite resistance of T.L. Consequently, Goodin asserts that the trial court committed reversible error because the jury was not required to find that either T.L.'s resistance was overcome by force, or she submitted while under reasonable apprehension of great bodily harm.
¶ 14. The State maintains that the language excised from requested jury instruction D-8 assumed that a lack of any physical resistance by T.L. was tantamount to her consent. We agree. The law is clear in Mississippi that physical resistance is not required for a rape conviction when the victim failed to resist out of reasonable fear of great bodily harm. Madere v. State, 794 So.2d 200, 210-11(¶ 26) (Miss.2001) (citing McQueen v. State, 423 So.2d 800, 802 (Miss.1982)). Goodin's requested jury instruction did not give the jury an opportunity to find that T.L. failed to resist because of a reasonable apprehension of great bodily harm. On the contrary, the requested jury instruction required the jury to find that T.L. used "all reasonable available physical resistance on her part to the use of force" in order to find Goodin guilty of rape. Consequently, we find that the trial court did not err in refusing to grant a jury instruction that would have incorrectly stated the law. This issue is without merit.
*358 II. Whether the evidence presented at trial was legally insufficient to allow a conviction of rape.
¶ 15. When inquiring whether sufficient evidence exists to support a conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Bush v. State, 895 So.2d 836, 843(¶ 16) (Miss.2005) (quoting Carr v. State, 208 So.2d 886, 889 (Miss. 1968)). This Court must reverse and render if the facts and inferences "point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty." Id. (citing Edwards v. State, 469 So.2d 68, 70 (Miss.1985)). However, where substantial evidence of such quality and weight exists to support the verdict, and where reasonable and fair-minded jurors may have found the defendant guilty, we must affirm the judgment of the trial court. McClendon v. State, 852 So.2d 43, 47(¶ 11) (Miss.Ct.App.2002) (citing Baker v. State, 802 So.2d 77, 81(¶ 13) (Miss. 2001)).
¶ 16. Goodin asserts that no rational jury could have found him guilty of rape because the State did not present any evidence that force was used against T.L. Goodin further asserts that T.L. could not have feared great bodily harm because she did not scream when she was being attacked by Goodin. We disagree.
¶ 17. T.L. testified that Goodin was between her legs and inside of her, and that he did this to her on numerous occasions at night. T.L. also testified that she was unable to get away from Goodin when he was on top of her. Moreover, T.L. specifically testified that she would tell Goodin to stop, but that he ignored her. Although T.L. testified that Goodin did not beat her during the attacks, she did testify that Goodin forced her to take her clothes off. T.L. also explained that she did not scream because she was scared.
¶ 18. In addition to T.L.'s testimony, both V.H. and Hopkins testified that Goodin "messed with" T.L. Specifically, Hopkins testified that he caught Goodin "messing with [T.L.]" on two separate occasions. On the first occasion, Goodin was in a shed alone with T.L. and Hopkins could not open the door. When Hopkins was finally able to open the door, Goodin was buttoning up his pants and buckling his belt. On the second occasion, Hopkins saw Goodin lying in the bed with T.L. and "messing with [her]." V.H. testified that Goodin came into their bedroom at night, on five or six occasions, and took T.L. back to his bedroom. V.H. also testified that on one occasion, she saw T.L. lying in their mother's bed beside Goodin.
¶ 19. Based on the aforementioned testimony, we find that substantial evidence supports the verdict, such that reasonable and fair-minded jurors may have found Goodin guilty of rape. Therefore, this issue is without merit.
III. Whether the trial court erred by allowing a substantive amendment of the indictment to change the charge from rape to sexual battery.
¶ 20. Rule 7.09 of the Uniform Rules of Circuit and County Court provides that "[a]ll indictments may be amended as to form but not as to the substance of the offense charged." Amendments of substance to an indictment must be made by a grand jury. Spann v. State, 771 So.2d 883, 898(¶ 44) (Miss.2000) (citing Miller v. State, 740 So.2d 858, 862(¶ 13) (Miss.1999)). Rule 7.09 further *359 provides that an "[a]mendment shall be allowed only if the defendant is afforded a fair opportunity to present a defense and is not unfairly surprised." In other words, an indictment may be amended if the amendment "does not materially alter facts which are the essence of the offense on the face of the indictment as it originally stood or materially alter a defense to the indictment as it originally stood so as to prejudice the defendant's case." Griffin v. State, 584 So.2d 1274, 1275 (Miss.1991) (citing Wilson v. State, 574 So.2d 1324, 1333 (Miss.1990)). If the defense to the original indictment is equally applicable to the amended indictment, then the amendment to the indictment is permissible, as it is one of form, not substance. Frazier v. State, 907 So.2d 985, 994(¶ 31) (Miss.Ct. App.2005) (citing Adams v. State, 772 So.2d 1010, 1021(¶ 52) (Miss.2000)).
¶ 21. Goodin asserts that the amendment to the indictment in this case did not constitute the removal of surplus language because he lost the defense of lack of force when charged with the crime of sexual battery as opposed to rape. Mississippi Code Annotated section 97-3-95 provides in relevant part that "[a] person is guilty of sexual battery if he or she engages in sexual penetration with . . . another person without his or her consent." On the other hand, Mississippi Code Annotated section 97-3-65(4)(a) provides in relevant part that "[e]very person who shall have forcible sexual intercourse with any person . . . shall be imprisoned for life."
¶ 22. Although rape requires "forcible sexual intercourse," and sexual battery requires sexual penetration without consent, the indictment specifically put Goodin on notice that he was charged with "forcibly inserting his penis inside [T.L.'s] rectum." Goodin's defense to this charge was not that it happened and was consensual, but that it did not happen. He testified that he never had sexual relations with T.L. and that he never touched her inappropriately. Therefore, we find that his defense to the original indictment was equally applicable to amended indictment. Consequently, we further find that the amendment to the indictment was permissible, as it was one of form rather than substance. This issue is without merit.
IV. Whether the trial court erred by allowing improper redirect examination of Donna Franks.
¶ 23. Goodin asserts that the trial court erred in overruling his objection to the State's redirect examination of Officer Franks. Goodin maintains that when the State asked Officer Franks who performed T.L.'s medical exam on redirect, it exceeded the scope of Goodin's cross-examination of the same witness. Goodin further asserts that prejudice from the improper redirect is clear because, had the State not asked Officer Franks about the medical exam, Officer Franks would not have been able to volunteer the results of the exam, i.e., that the exam showed anal and vaginal penetration.
¶ 24. The line of questioning explored by Goodin during cross-examination was as follows:
[Defense counsel]: Okay. Was there ever any rape kit done?
[Officer Franks]: There wasn't a rape kit. There was a medical exam 
[Defense counsel]: Okay.
[Officer Franks]:  done.
[Defense counsel]: All right. But there was no rape kit done, correct?
[Officer Franks]: No, sir, there wasn't.
On redirect, the State conducted the following examination of Officer Franks:
[The State]: Officer Franks?
[Officer Franks]: Yes.

*360 [The State]: You were asked about a medical exam.
[Defense Counsel]: Your Honor, I did not ask about any medical exam, Your Honor. I asked if there was any rape kit conducted.
THE COURT: The objection will be overruled.
[The State]: You stated there was a medical exam done?
[Officer Franks]: Yes, it was.
[The State]: Who did the medical exam?
[Officer Franks]: Dr. Linda Chidester.
[The State]: And do you know where Dr. Chidester is now?
[Officer Franks]: She has moved to Jamaica, but there was anal and vaginal penetration.
[Defense counsel]: Your Honor, I object.
THE COURT: Don't tell what the examination was, now.
[Officer Franks]: Yes, sir.
[The State]: Did you have the results of that exam during your investigation?
[Officer Franks]: Yes.
[The State]: And what did you do after you had all the evidence of this case? What did you do next with the case?
[Officer Franks]: I presented it to the grand jury.
[The State]: And what did the grand jury do?
[Officer Franks]: They came back with an indictment.
¶ 25. This Court will not reverse the decision of a trial court regarding evidentiary matters unless the discretion of the trial court "so abused as to be prejudicial to a party." Farris v. State, 906 So.2d 113, 119-20(¶ 20) (Miss.Ct.App. 2004) (citing Beech v. Leaf River Forest Prods., 691 So.2d 446, 448 (Miss.1997)). "[T]rial courts have broad discretion in allowing or disallowing redirect examination of witnesses and when the defense attorney inquires into a subject on cross-examination of the State's witness, the prosecutor on redirect is unquestionably entitled to elaborate on the matter." Manning v. State, 835 So.2d 94, 99-100(¶ 15) (Miss.Ct.App.2002) (citing Greer v. State, 755 So.2d 511, 516(¶ 14) (Miss.Ct. App.1999)). Consequently, we will not disturb a trial court's ruling on matters pertaining to redirect examination unless there has been a clear abuse of discretion. Farris, 906 So.2d at 119-20(¶ 20) (citing Lloyd v. State, 755 So.2d 12, 14(¶ 9) (Miss. Ct.App.1999)).
¶ 26. On his cross-examination of Officer Franks, Goodin inquired whether a rape kit had been performed on T.L. Although Goodin did not ask whether a medical exam had been performed, this information was volunteered by Officer Franks in response to Goodin's line of questioning. Based on these facts, we cannot say that the trial court clearly abused its broad discretion when it allowed the State to redirect regarding information elicited by defense counsel during cross-examination. Therefore, this issue is without merit.
¶ 27. THE JUDGMENT OF THE CIRCUIT COURT OF LEE COUNTY OF CONVICTION OF COUNT I, RAPE, AND COUNT II, SEXUAL BATTERY, AND SENTENCE OF LIFE FOR COUNT I, AND THIRTY YEARS FOR COUNT II, WITH BOTH SENTENCES TO RUN CONCURRENTLY, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND A FINE OF $5,000 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LEE COUNTY.
KING, C.J., MYERS, P.J., IRVING, BARNES AND CARLTON, JJ., CONCUR. CHANDLER, J., CONCURS *361 IN PART. ROBERTS, J., CONCURS IN PART AND DISSENTS IN PART. GRIFFIS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY LEE, P.J., CHANDLER AND ROBERTS, JJ.
GRIFFIS, J., Concurring in Part, Dissenting in Part:
¶ 28. I concur as to Issues I, II, and IV. With respect for the majority, I dissent from its decision to affirm on Issue III. I find that Goodin was prejudiced when the State amended Count II of the indictment from rape to sexual battery. Therefore, I would reverse and render Goodin's conviction as to Count II.
¶ 29. "This Court has often held that trial courts have no authority to grant substantive amendments to indictments." Davis v. State, 684 So.2d 643, 660 (Miss. 1996). "It is hornbook law that a prosecutor has no power to alter the substance of an indictment, either through amendment or variance of the proof at trial without the concurrence of the grand jury." State v. Berryhill, 703 So.2d 250, 258 (Miss.1997). The test of whether a change to the indictment is one of substance is "whether or not a defense under the indictment of information as it originally stood would be equally available after the amendment is made." Griffin v. State, 540 So.2d 17, 21 (Miss.1989) (quoting Reed v. State, 506 So.2d 277, 279 (1987)). Therefore, an indictment may only be amended at trial if the amendment is immaterial to the merits of the case and the defense will not be prejudiced by the amendment. Lester v. State, 692 So.2d 755, 774-75 (Miss.1997).
¶ 30. As the supreme court has recently explained:
Thus, taken together, this authority sets forth the following test for analyzing an amendment to an indictment for the purpose of removing surplusage: (1) the removal of the surplusage must not change the substance of the offense charged; (2) the defendant must be afforded a fair opportunity to present a defense and must not be unfairly surprised; (3) the removal of the surplusage must not materially alter the essential facts of the offense; and (4) the removal of the surplusage must not alter a defense under the original indictment.

Lee v. State, 944 So.2d 35, 40(¶ 16) (Miss. 2006) (emphasis added).
¶ 31. In Rhymes v. State, 638 So.2d 1270 (Miss.1994), it was error to amend an indictment from charging one type of sexual battery to another type of sexual battery. Specifically, Rhymes's original indictment charged him with sexual battery "of a female under the age of fourteen." Id. at 1272. The victim was actually 26. Id. After the jury was impaneled, the state moved to amend the indictment to charge sexual battery of a female "over fourteen years." Id. Because he was entitled to a directed verdict under the original indictment, the amendment was one of substance and "beyond the power of the circuit court and requires Grand Jury action to correct. It was reversible error for the circuit court to amend the indictment." Id. at 1276.
¶ 32. This Court likewise came to the same conclusion where an indictment was amended from charging one type of rape to another type of rape. Moses v. State, 795 So.2d 569, 573(¶ 19) (Miss.Ct.App. 2001). Originally, Counts Seven through Thirteen charged Moses with raping a female under the age of fourteen. Id. at 570(¶ 4). It was later discovered that the complainant was over fourteen at the time. Id. at 571(¶ 10). "The trial court's solution to this was to permit the State to proceed to try those seven counts on the theory of *362 a forcible rape of a person fourteen years old or older." Id. at (¶ 11). The Court held this amendment:
was, beyond question, one of substance and not of form. The constituent elements of the two crimes are materially different. In the case of a child under . . . fourteen . . . consent is not an issue. However, as to the forcible rape of a person fourteen . . . or older, . . . consent[] . . . may be offered as a defense.
Id. at 573(¶ 19). Because it was "self-evident that Moses would have been entitled to a directed verdict of acquittal under the indictment in its original form" the Court reversed and rendered the convictions under these counts. Id.
¶ 33. I believe Rhymes and Moses instruct our decision here. Count II originally charged Goodin with rape. Specifically, Count II originally read:
JAMES ROBERT GOODIN
. . . .
COUNT II
in said County and State on the [sic] from the 1st day of June, A.D., 2002 through the 31st day of May, 2003, did willfully, unlawfully and feloniously against her will rape, ravish and carnally know [T.L.], a female human being, and at the time of said rape the said JAMES ROBERT GOODIN was eighteen (18) years of age or older by forcibly inserting his penis inside the rectum of [T.L.]; contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Mississippi.
The only difference between Counts I and II was that Count I contained the word "vagina" instead of "rectum." There were no specific statutes cited. The only words that give notice of the charge the state was seeking were "against her will rape, ravish and carnally know" and "said rape."
¶ 34. After both sides rested, and after the court approved jury instructions, Count II was amended to charge sexual battery. Specifically, the phrase "rape, ravish and" and the word "rape" were deleted from the indictment. Defense counsel objected because the defenses of lack of vaginal penetration and lack of force were no longer available. In fact, the reason the State asked for and the trial court granted the amendment was because these elements could not be proven. It is telling that in opening arguments, both the State and defense counsel told the jury that the defendant was charged with rape only. Further, the State submitted a rape instruction on Count II. After the amendment, the court allowed the State to withdraw its rape instruction and substitute a sexual battery instruction. The defendant's instructions still read that defendant was charged with rape. After both sides rested, and after the amendment was allowed, the State told the jury that he was charged with rape and sexual battery.
¶ 35. Rape is defined as "forcible sexual intercourse with any person." Miss.Code Ann. § 97-3-65(4)(a) (Rev.2006). "Sexual intercourse" is limited to penis-vagina penetration. Miss.Code Ann. § 97-3-65(6) (Rev.2006). Sexual battery in this case was "sexual penetration with another person without his or her consent." Miss. Code Ann. § 97-3-95(1)(a) (Rev.2006). "Sexual penetration" is much broader than "sexual intercourse" and includes sodomy. Miss.Code Ann. § 97-3-97(a) (Rev.2006).
¶ 36. Like Rhymes and Moses, the amendment in the instant case was prejudicial, because before the amendment, Goodin was entitled to a directed verdict on Count II. Rhymes, 638 So.2d at 1272; Pittman v. State, 836 So.2d 779, 785(¶ 21) (Miss.Ct.App.2002) (no evidence of vaginal penetration). This is because there was no *363 sexual intercourse. This is an essential element of rape that is not an element of sexual battery. The issue of sexual intercourse was material to the merits of the State's case. The amendment changed the entire offense charged. The circuit court was without authority to change the crime charged. Only the Grand Jury would have that authority.
¶ 37. As the majority discusses, another implication was an available defense of lack of force. Force is also an essential element of rape that is not an element of sexual battery. The majority reasons, however, that Goodin's actual defense below was not lack of force. To the contrary, this was the very defense discussed in Issue II. Furthermore, all that is required is that "a" defense is no longer available. Lee, 944 So.2d at 40(¶ 16). Here, lack of force was one such defense. This argument also does not take into account that Goodin had the best defense of all: he was actually innocent of committing the crime of rape.
¶ 38. Finally, the majority reasons that Goodin knew he was "charged with `forcibly inserting his penis inside [T.L.'s] rectum.'" I must respectfully disagree. What Goodin knew was that he was "charged with" the crime of rape for committing the above sexual penetration. As the record indicates, the prosecution, the trial court, the defense, and the jury (before the amendment) all knew that the only thing the State sought was a conviction of rape in Count II. If the indictment was not sufficient to put the State and trial court on notice, it certainly is not enough to put the defendant on notice.
¶ 39. Another reason this case requires reversal is that Goodin did not have the opportunity to put on a defense, let alone "prepare" a defense to the crime of sexual battery for which he was ultimately convicted. He could neither cross-examine witnesses nor use compulsory process to that end. Unlike Rhymes and Moses, the amendment did not take place until after the defense rested. If it was nevertheless error for the trial court in Rhymes to grant a continuance to allow the defendant time to prepare a defense to that amended indictment, surely it is error for this trial court to have denied Goodin even that luxury.
¶ 40. I would reverse and render the conviction of Count II, and affirm the conviction of Count I.
LEE, P.J., and CHANDLER AND ROBERTS, JJ., JOIN THIS SEPARATE OPINION.