546 So.2d 359 (1989)
Clara L. HUDSON
v.
Dr. Michael TALEFF.
No. 58487.
Supreme Court of Mississippi.
June 7, 1989.
Laurel G. Weir, Thomas L. Booker, Jr., Philadelphia, for appellant.
Walter W. Eppes, Jr., William B. Carter, Eppes, Watts & Shannon, Meridian, for appellee.
Before HAWKINS, P.J., and PRATHER and PITTMAN, JJ.
PRATHER, Justice, for the Court:
The application of the right to a fair and impartial jury trial in a medical malpractice civil case is the subject of this appeal. Clara Hudson brought this action in the Circuit Court of Lauderdale County, Mississippi, alleging negligence arising out of eye surgery performed by Dr. Michael Taleff. The jury found in favor of Dr. Taleff. Feeling aggrieved, Mrs. Hudson brings this appeal and assigns as error the following:
(1) Appellant did not receive a fair and impartial trial because the jury was not selected according to law resulting in a jury being selected prejudiced in favor of appellee against appellant.
(2) The court erred in granting instruction D-8 over objection of appellant.
(3) The court erred in granting instruction D-7 over the objection of appellant.
(4) The verdict of the jury and judgment of the court is contrary to the overwhelming weight of the law and evidence and not supported by any law or evidence and the court erred in not directing a verdict for appellant and in rulings on the objections.

I.
Dr. Michael Taleff has practiced medicine specializing in ophthalmology in Meridian, Mississippi since 1969. Dr. Taleff and his associates have treated Clara Hudson, age 84 at the time of trial, since 1974.
On January 30, 1984, Dr. Taleff examined Mrs. Hudson and found that the cataract in her right eye was ready for surgery. He informed her that it was possible to implant intraocular lens inside her eye to correct her vision; Mrs. Hudson allegedly consented to the procedure and to the implantation of a lens. Dr. Taleff performed cataract surgery and implantation of an anterior chamber lens implant on Mrs. Hudson's right eye on February 1, 1984. Mrs. Hudson experienced iritis/inflammation after surgery. She also contends she suffered severe pain. Dr. Taleff last saw Mrs. Hudson on September 4, 1984. At *360 that time, her vision had improved to 20/50 as compared to 20/400 she experienced prior to surgery.
Mrs. Hudson never returned to Dr. Taleff and elected to go under the care of Dr. Lynn McMahan, an ophthalmologist practicing in Hattiesburg. Dr. McMahan saw Mrs. Hudson on September 24, 1984, and found a malposition of the anterior chamber lens. Dr. McMahan removed the lens placed in Mrs. Hudson's right eye by Dr. Taleff and implanted another lens of the same type. Nevertheless, Mrs. Hudson continued to suffer from iritis and inflammation following Dr. McMahan's surgery. Finally, the second lens was completely removed by Dr. Wayne Beyer, Dr. McMahan's partner. Mrs. Hudson lost the vision in her right eye.
Mrs. Hudson filed a complaint for medical negligence against Dr. Taleff on January 22, 1986, alleging that he had negligently performed the cataract surgery and lens implantation and that he did not provide adequate follow-up medical care. Dr. Taleff answered that he had not deviated from the accepted standards of medical care for ophthalmology in performing the cataract surgery, in the implantation of the lens, or in providing follow-up care. Mrs. Hudson produced an expert witness, Dr. Kenneth Fox, who testified that the acts of Dr. Taleff were below the minimum standard of care. Dr. Taleff produced an expert witness, Dr. Sam Johnson, who contradicted Dr. Fox and asserted that Dr. Taleff's actions were entirely appropriate. Such were the factual issues submitted to the jury. The trial resulted in a verdict in favor with Dr. Taleff.

II.

DID MRS. HUDSON RECEIVE A FAIR AND IMPARTIAL JURY PANEL?
During voir dire, counsel for Mrs. Hudson moved the court to quash the jury panel for alleged violations of the applicable jury statutes and for fraud. Mrs. Hudson contends that: (A) the jury was not properly summoned by the Lauderdale County Sheriff in that the circuit clerk mailed summonses to prospective jurors rather than attempting personal service through the sheriff or some other officer; and (B) the method of selecting the jury was prejudicial and that Mrs. Hudson was forced to try her case before jurors who had been patients of Dr. Taleff, or patients of his two partners, Drs. Dan and Lowery Moore.

A.
The selection of a jury is controlled by Miss. Code Ann. § 13-5-1, et seq. The following sections have application to the issues presently before the court.
Miss. Code Ann. § 13-5-8 provides that:
(1) In April of each year, the jury commission for each county shall compile and maintain a master list consisting of the voter registration list for the county.
(2) The circuit clerk of the county and the registrar of voters shall have the duty to certify to the commission during the month of January of each year under the seal of his office the voter registration list for the county.
Miss. Code Ann. § 13-5-10 provides in part:
The jury commission for each county shall maintain a jury wheel into which the commission shall place the names or identifying numbers of prospective jurors taken from the master list... . In April of each year, ... the wheel shall be emptied and refilled as prescribed in this chapter.
Miss. Code Ann. § 13-5-16 provides in part:
(1) [F]rom time to time and in a manner prescribed by the court, a private citizen who does not have an interest in a case pending trial and who is not a practicing attorney publicly shall draw at random from the jury wheel the names or identifying numbers of as many prospective jurors as the court by order requires. The clerk shall prepare an alphabetical list of the names drawn. Neither the names drawn nor the list shall be disclosed to any person other than pursuant to this chapter or specific order of the court.
Miss. Code Ann. § 13-5-26 provides in part:

*361 (1) The circuit clerk shall maintain a jury box and shall place therein the names or identifying numbers of all prospective jurors drawn from the jury wheel.
(2) A judge or any court or any other state or county official having authority to conduct a trial or hearing with a jury within the county may direct the circuit clerk to draw and assign to that court or official the number of jurors he deems necessary for one or more jury panels or as required by law for a grand jury, except as otherwise provided by subsection (3) of this section. Upon receipt of the direction, and in a manner prescribed by the court, the circuit clerk shall publicly draw at random from the jury box the number of jurors specified.
Miss. Code Ann. § 13-5-28 provides that:
If a grand, petit or other jury is ordered to be drawn, the clerk thereafter shall cause each person drawn for jury service to be served with a summons, either personally or by mail, addressed to him at his usual residence, business or post office address, requiring him to report for jury service at a specified time and place.
(Emphasis added).
As a basis for her motion to quash the panel, Mrs. Hudson called as a witness the Circuit Clerk of Lauderdale County, Raymond Davis, to testify with respect to the selection of the jury panel for this case. Mr. Davis testified that 92 potential jurors were mailed a summons by regular mail six days prior to trial. No process was issued for jurors to be served by the sheriff or any lawful officer of Lauderdale County and the only service attempted was by mail. Mr. Davis testified that he excused twelve potential jurors based upon varied legal excuses. Four other jurors were excused by the court for valid statutory reasons.
After the verdict was received into open court, Mr. Davis was again called to the witness stand by Mrs. Hudson's counsel. Mr. Davis then testified that during the month of January, he provided to the jury commissioners a list of all qualified voters in Lauderdale County. The list was reviewed by the Commissioners who picked every fourth name to fill the jury wheel on the first day of April. After the jury wheel was filled and before the term of court, a disinterested person was chosen to pull approximately 1,200 names out of the jury wheel for placement in the jury box. Mr. Davis testified that he sometimes used a deputy sheriff to pull names from the jury wheel but that he could not recall the identity of the person selected in this particular case.
It is clear from the testimony of Mr. Davis that he followed all of the proper statutory procedures in impaneling the jury. In January he provided a list of qualified voters to the jury commissioners and in April the jury wheel was filled by the jury commissioners pursuant to § 13-5-8. The jury commissioners properly maintained the jury wheel and placed the names of at least 1,200 prospective jurors taken from the master list onto the jury wheel pursuant to § 13-5-10. A private citizen with no interest in the case was requested to draw names of potential jurors at random from the jury wheel pursuant to § 13-5-16 and a jury box was maintained wherein the names and numbers of all prospective jurors were placed and drawn from the jury wheel pursuant to § 13-5-28. The trial court was correct in finding that the jury was properly drawn and summoned.

B.
Mrs. Hudson has alleged that this jury was prejudiced, biased and unfair because certain members of the original jury panel or members of their families had been (1) patients of Dr. Taleff or his medical partners or (2) represented by Dr. Taleff's attorney or his partners.
Of the 40,338 qualified voters of Lauderdale County, ninety-two people were summoned for jury duty during the week of the trial of February 2, 1987; however, there was only a jury pool of twenty-five from which a jury could be selected. Of these twenty-five, twelve, or 48 percent, had some connection with Dr. Taleff, his medical *362 partners or his attorney. The defendant, Dr. Michael Taleff had a medical associate, Dr. Moore, and Dr. Taleff's attorney was a firm comprised of Walter Epps, William B. Carter, and J.R. Shannon, among others.
Out of the twenty-five remaining names on the petit jury panel, Juror One, Frances Vaughn, stated to the Record that Dr. Taleff was her doctor who had been treating her as her Ophthalmologist and physician. Juror Three, Neda G. Hill, stated that Dr. Taleff and his Associate Dr. Moore are her regular treating physicians and that she is due to return shortly to them for further treatment. Juror Five, Carolyn A. Bailey, stated Dr. Taleff was her doctor only a few months ago and that she will go for a checkup in a reasonably short period of time. Juror Six, Dorothy C. Scruggs, stated Dr. Taleff is her regular Ophthalmologist and that Attorney J.R. Shannon, representing Dr. Taleff in this cause, is her regular family attorney. Further, she opined that if she had any legal business that Shannon would be contacted and if he needed any eye treatment, Dr. Taleff would be contacted. Juror Seven, Furahae Saba, has seen Dr. Taleff in the past two years and Dr. Moore, his partner, treated her grandmother. Juror Eight, Lovell M. Deeb, stated that until her mother died, Dr. Taleff's associate, Dr. Moore, was a regular treating physician and Opthalmologist for her mother. Juror Ten, Mary Elizabeth Jones, was employed by Meridian Public Schools and was hired by Dr. Taleff's wife, a member of the school board. Juror Fourteen, James Roy Lovett, Sr., was a client of Attorney Shannon in a legal matter and had represented him in the past as his own personal attorney. Juror Sixteen, Leo W. Miles, Jr., had seen Dr. Moore ten to twelve years ago and would consider returning. His mother had been treated by Dr. Taleff four years ago. Juror Eighteen, Mrs. Ivy, carried her father to Dr. Taleff's associate, Dr. Moore. Juror twenty-three, Ida Mae Ford, had her son being treated by Dr. Taleff, since he was twelve years of age, and the son, now twenty-seven years of age, continues to use Dr. Taleff. Juror twenty-five, Dorothy Mae Irby, was a patient of Dr. Moore and she was to return for a checkup soon.
Mrs. Hudson challenged for cause thirteen of the twenty-five member jury pool. The trial judge excluded from service two jurors from the thirteen challenged. Mrs. Hudson requested a mistrial and asked the court to summon additional jurors and to grant additional challenges and to excuse those jurors for cause because of their relationship to the doctors or attorneys. The plaintiff's position is that the trial judge should have excluded the thirteen jurors named above for cause. His failure to do so required the plaintiff to exhaust his entire peremptory challenges on persons who should have been excluded for cause, thereby leaving none for peremptory challenges. The defendant exhausted its peremptory challenges as well and did eliminate some of the potential thirteen jurors to which the plaintiff objected.
Mrs. Hudson now complains about three jurors, Lovell M. Deeb, Barbra Jane Ivy, and Ida Mae Ford. Ida Mae Ford, however, was challenged peremptorily as an alternate juror by Mrs. Hudson and did not serve on the jury in this case; therefore, only remaining jurors Lowell M. Deeb and Barbra Jane Ivy had a connection with Dr. Taleff's medical firm. Juror Deeb's voir dire testimony was that she took her now deceased mother-in-law to Dr. Moore, a partner of Dr. Taleff, the last time being about nine years prior to the trial. Juror Ivy stated that she had taken her father to Dr. Moore one year prior to this trial but that service as a juror would cause her no embarrassment.
Our judicial system is grounded toward providing a fair trial. In criminal prosecutions, among the constitutional guarantees aimed at securing a fair trial is the requirement of a "a trial by an impartial jury." Miss. Const. Art. 3, § 26.
.....
Respect for the sanctity of an impartial trial requires that courts guard against even the appearance of unfairness for "public confidence in the fairness of jury trials is essential to the existence of our *363 legal system. Whatever tends to threaten public confidence in the fairness of jury trials, tends to threaten one of our sacred legal institutions."
Mhoon v. State, 464 So.2d 77, 81 (Miss. 1985) (quoting Lee v. State, 226 Miss. 276, 83 So.2d 818 (1955).
In civil cases, excluding most chancery proceedings, the right to a jury trial is based on Mississippi Constitution Article 3, § 31, which provides that the right of a "trial by jury shall remain inviolate." Under this constitutional provision, it is the duty of the court to see that a competent, fair, and impartial jury is impanelled. Marshall Durbin, Inc. v. Tew, 381 So.2d 152, 154 (Miss. 1980), Mississippi Power Company v. Stribling, 191 Miss. 832, 3 So.2d 807, 810 (1941). Additionally, Mississippi Constitution Article 3, § 14 guarantees due process of law which concept also includes a fair and impartial trial.
There are over 40,000 persons from which a jury could have been drawn in Lauderdale County. Mrs. Hudson was limited to a jury pool of twenty-five, 48 percent of which were connected in some way to Dr. Taleff; "[t]he statistical probability of this situation seems somewhat remote." Mhoon at 80. In addition, even after using all of her peremptory challenges Mrs. Hudson was left with two jurors who had had some prior connection to Dr. Taleff. The holding of Mhoon is that trial judges must scrupulously guard the impartiality of the jury and take corrective measures to insure an unbiased jury. Pinkney v. State, 538 So.2d 329, 345 (Miss. 1988).
Given the statistical aberation in the jury pool, the judge could have done several things to ameliorate its prejudicial effect: (1) he could have afforded counsel additional peremptory challenges, (2) he could have increased the size of the available venire as well as affording additional challenges, or (3) he could have sustained at least some of the challenges for cause.
Mhoon at 81 (citations omitted). This holding equally applies in civil cases.
It should be noted that this case was tried in Lauderdale County, one of our larger counties where the above suggestions are readily available, and could be followed for corrective measures in cases where this statistical aberration occurs in a jury pool. However, this Court does not address this situation insofar as the lesser populated rural counties are concerned.
This Court finds no indication in this record of any fraud. Rather, because of the "statistical aberration" of the makeup of the venire and the strong likelihood that the opportunity for undue influence over other jurors in this case was too great, this Court holds that the trial jury was not impartial. This case should be remanded for a new trial.

III.

DID THE TRIAL COURT ERR IN GRANTING JURY INSTRUCTION D-8?
Instruction D-8 stated:
You are instructed that before you may return a verdict for Mrs. Hudson, you must find not only that Dr. Taleff deviated from the standards of care and skill required of him as an ophthalmologist, as to which standards you will receive in other instructions, but also that such deviation was a proximate contributing cause of any injuries which you may find Mrs. Hudson has sustained.
Relying upon Chapman v. State, 227 So.2d 476 (Miss. 1969), Mrs. Hudson argues that this instruction is defective because it does not specifically include language requiring the jury to make their findings based "from the evidence". However, Chapman held such an omission to be fatal error where there was no instruction in the case to require the jury to confine its consideration of guilt to the evidence. Chapman at 477.
In Church v. State, 288 So.2d 855 (Miss. 1974), this Court specifically held that the omission of the phrase "from the evidence" was rendered harmless error where other instructions, in one form or another, admonished the jury to confine its deliberations to the evidence. Further, "if an error in one instruction is cured by another, and when, considered as a whole, the instructions *364 correctly state the law, the error will not be reversible." Church at 857; Roberts v. State, 458 So.2d 719 (Miss. 1984).
In the case at bar, the jury was instructed that they were to make their findings based upon the evidence. (Instructions C-1, C-2, P-5A, P-7, D-6). Thus the deficiency in D-8 was cured by five other instructions. This assignment of error, therefore, is without merit.

IV.

DID THE TRIAL COURT ERR IN GRANTING JURY INSTRUCTION D-7?
Instruction D-7 stated:
You are instructed that the mere fact that a less than desirable result followed Dr. Taleff's surgery does not, in itself, require you to find that Dr. Taleff failed in any duty he owed to Mrs. Hudson. A surgeon is not an insuror or guarantor of favorable results. If Dr. Taleff exercised the degree of care and skill possessed by ordinarily careful and skillful surgeons of the same time and in the particular branch of the profession in which he practiced, he is not liable simply on the basis of the results that followed.
This Court has held that:
[O]ur law has never held a physician or surgeon liable for every untoward result which may occur in medical malpractice. A physician is not an insurer of the success of his care and treatment.
Walker By and Through Walker v. Skiwski, 529 So.2d 184, 185 (Miss. 1988); Dazet v. Bass, 254 So.2d 183, 187 (Miss. 1971). This instruction is authorized by Mississippi case law; therefore, this assignment of error is without merit.

V.

WAS THE VERDICT AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
This assignment of error deals with questions of fact which will be re-submitted to the jury. Therefore, the Court will not comment on the evidence previously presented; however, the Court will state that under the record before us, there was sufficient evidence to make out a prima facie case to be submitted to the jury for their factual determination.
Based upon the "statistical aberration" of the makeup of the venire, this case is reversed and remanded for a new trial.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.