781 So.2d 912 (2000)
Angel DAVIS, Individually and On Behalf of the Heirs-At-Law of Baby Boy Davis, Deceased, Appellant
v.
William E. POWELL and The Walley Clinic, Appellees.
No. 97-CA-00646-COA.
Court of Appeals of Mississippi.
December 12, 2000.
Certiorari Denied March 22, 2001.
*913 Isaac K. Byrd, Jr., Felecia Perkins, Jackson, Attorneys for Appellant.
Robert D. Gholson, Craig Newman Orr, Laurel, Attorneys for Appellees.
EN BANC.

ON MOTION FOR REHEARING
IRVING, J., for the Court:
¶ 1. The motion for rehearing is denied. However, the original opinion issued in this case is withdrawn, and this opinion substituted.
¶ 2. Angel Davis, individually and as the representative of the heirs at law of her deceased baby, Roy Davis, filed a medical negligence action against Dr. William E. Powell, the Walley Clinic and Dr. W.W. Walley. Prior to trial, Dr. W.W. Walley was dismissed from the lawsuit. A jury returned a verdict in favor of Dr. Powell and the Walley Clinic. After Angel's posttrial motions were denied by the trial *914 court, she perfected this appeal, assigning for appellate review one issue which we quote verbatim:
THE APPELLANT, ANGEL DAVIS, FAILED TO RECEIVE A FAIR AND IMPARTIAL TRIAL BECAUSE THE CIRCUIT JUDGE BELOW ERRED IN REFUSING TO REMOVE POTENTIAL JURORS CHALLENGED FOR CAUSE BASED ON THEIR RELATIONSHIP AS CURRENT OR FORMER PATIENTS OF DR. POWELL AND THE WALLEY CLINIC.
We find merit in the assigned issue and reverse and remand for a new trial.
¶ 3. It is not necessary to relate the facts giving rise to the medical negligence action filed by Angel against Drs. Powell and Walley and the Walley Clinic because the issue raised on this appeal involves only the issue of jury selection. Thus, we go directly to the facts undergirding this issue.

FACTS
¶ 4. Before the trial judge began striking jurors for cause, the venire was composed of fifty-three jurors. Of this number, thirty jurors indicated, by raising their hands, that they were patients of the Walley Clinic although they were not necessarily all patients of Dr. Powell. Twenty-one jurors indicated by the same means that they had not been to the Walley Clinic. However, three jurors raised their hands with both groups, i.e., with those who said they were patients of the Walley Clinic as well as with those who said they had not been to the Walley Clinic, and five jurors did not raise their hands with either group.
¶ 5. Of the thirty jurors who indicated that they were patients of the Walley Clinic, five of them: Frankie J. Everett, Alison Slater, Ronald Moody, John Lewis Everett, and Prince Staten served on the jury. Dr. Powell was the family physician for two of them: Frankie J. Everett and Prince Staten. Of the five jurors who did not raise their hands with either group, two of them, Sue W. Beard and Joseph M. Davis, served on the jury.
¶ 6. Twenty jurors had received the Wayne County Hospital newsletter within the last six months. One of the issues carried a positive feature story on Dr. Powell. Of these twenty that received the newsletter, six actually served on the jury. Those six were: Sue W. Beard, Joseph M. Davis, Ellen Ann Walters, Alice Powe and Kelli Bowles.
¶ 7. Nineteen jurors said that if they had a need for medical services they would go to Dr. Powell, Dr. Walley or the Walley Clinic. Of the nineteen, three jurors, Sue W. Beard, Alice M. Powe, and Prince Staten, served on the jury.
¶ 8. After voir dire, Judge Bailey and counsel retired to chambers where the following occurred:
BY JUDGE BAILEY: We're going to take up strikes for cause first. Each side will have four peremptory challenges.
BY MR. BYRD: Judge, before we begin, the Plaintiffs would like to make a general or attunes [sic] motion to strike the entire panel and move for a change of venue on the basis of these relationships between almost 60 to 75 percent of the panel and the physician, whether it's a friendship, other relationships, relatives, patients, present, past and even future employees of the hospital or employees of the clinic.
¶ 9. The court took the motion under advisement until after consideration of strikes for cause. Then the trial judge, sua sponte, struck twelve jurors for cause, and counsel for Davis asked the court to strike an additional eighteen jurors for cause. These jurors were: Lorena Bunch, *915 Donna J. Jones, Norma J. Gardner, W.G. Sanders, Sue W. Beard, Ruby B. Coleman, Kelli A. Bowles, Prince Staten, Alice M. Powe, Jimmy T. Walker, Mack Daniels, Randy Wayne Hodge, Mrs. Charles Rigney, Lyle Jones, Chrissy McCollough, Jimmy E. Gandy, Ro Repsher and Ellen Ann Walters. The trial judge denied the request except as to Mack Daniels. The judge also granted a defense request to strike one juror for cause. Prior to the Plaintiffs' exercising their peremptory challenges, the following exchange took place:
BY JUDGE BAILEY: All right. If my math is correct, the Court is now granting 14 challenges for cause. We started with 53. That leaves 39. I can grant an additional 2 strikes, 2 additional peremptory challenges, giving each side 6. We'll have 2 alternates and each side will have 1 strike for the 2 alternates. And we could still pick a jury.
BY MR. WILLIAMSON: Your Honor, may I address that?
BY JUDGE BAILEY: Yes.
BY MR. WILLIAMSON: We think just giving additional strikes to both sides would further place the Plaintiffs in an even more disadvantageous position because the overwhelming number of persons who are friends and say they could still be fair or either who, for example, are the Doctor'sthat there aresome objections have been made to are jurors that we at least think would become in biased against the Plaintiff one way or the other.
To give them more challenges would only enhance their position. We suggest to Your Honor that that should be possibly on an "as you go" basis as we consider the jurors themselves. We do need additional peremptory challenges Your Honor, but if we giveif we turn around and give those to the extent thatFor example, if we needJust hypothetically to make my point, Your Honor
BY JUDGE BAILEY: I understand your point. Just wrap it up.
BY MR. WILLIAMSON: If we had 10 that we thought we needed to peremptory-challenge out of this great number of jurors and they had 3, obviously, we'd run out and we'd have 6 that we really thought needed to be off the jury, whereas it wouldn't affect them in the same kind of way.
BY JUDGE BAILEY: All right. Well, I'm goingThat will be denied to give Plaintiff more challenges than the Defendant. I'm going to give you an equal number. I'm trying to accommodate both sides pursuant to Hudson versus Tatum. I'll leave it up to you. You can either take 4 or 6.
BY MR. WILLIAMSON: 4, Your Honor.
BY JUDGE BAILEY: All right. Each side willMr. Gholson, is 4 acceptable to the Defendants?
BY MR. GHOLSON: Yes, sir.
¶ 10. The plaintiffs then used their four peremptory challenges to strike four of the eighteen jurors whom they had asked the trial judge to strike.

ANALYSIS OF THE ISSUE PRESENTED
¶ 11. As stated, the plaintiffs peremptorily struck four jurors after the trial court declined to do so. Those four jurors were: Lorena Bunch, Donna J. Jones, Norma Jean Gardner, and W.G. Sanders. Although it is impossible for us to say with certainty why the plaintiffs struck these jurors peremptorily, the record is sufficient for us to conclude that these jurors should have been struck for cause, and faced with the trial judge's refusal to strike them for cause, the plaintiffs *916 had to use their peremptory strikes. The record shows the following information about these four jurors.
1. Lorena Bunch: She first said Dr. Powell was her family physician. She later changed that statement and clarified as follows: "He's not my family physician, but I was under Dr. Walley five years ago and, when Dr. Walley left, he [Dr. Powell] delivered my first child." She also affirmed that if she had need of medical services again, she would use Dr. Powell and the Walley Clinic. Her father-in-law and brotherin-law worked as mechanics at Wayne General Hospital.
2. Donna J. Jones: Dr. Powell was Jones's family physician. She also said she believed Dr. Powell would tell the truth even if it hurt him.
3. Norma Jean Gardner: Norma had a sister-in-law who worked for Dr. Powell at the Walley Clinic, and Dr. Powell was her family doctor.
4. W. G. Sanders: Sanders agreed with Juror Mercer that if there were wrongdoing, it needed to be corrected but not necessarily with dollars, not necessarily with a money judgment. He also thought there had been so many prevalent lawsuits.
¶ 12. While each of these jurors indicated that his/her situation, views or relationship would not affect his/her vote in this case, human experience teaches otherwise. Even the trial judge recognized as much because he excused Elizabeth Busby for cause, notwithstanding her affirmation that she could put aside the fact that Dr. Powell was her family doctor and a friend of her husband. It is unclear to us why the trial judge was unwilling to accept Busby's word but was willing to accept the words of Ellen Walters, Sue W. Beard, Kelli A. Bowles, Prince Staten and Alice Powe that they could lay aside their relationship with Dr. Powell and try the case on the merits. Busby's relationship with Dr. Powell was not remarkably different from that of the others. The relationship of these jurors with Dr. Powell is set forth below.
¶ 13. Of the fourteen jurors remaining from the original group of eighteen after Davis exercised her four peremptory strikes, five, Ellen Ann Walters, Sue W. Beard, Kelli A. Bowles, Prince Staten and Alice Powe, actually served on the jury. As to the reasons supporting a strike of these jurors for cause, the record reveals the following:
1. Ellen Allen Walters: Dr. Powell was Walters's family doctor.
2. Sue W. Beard: Dr. Powell was her family physician. Beard knew Cynthia Loper, a registered nurse and witness for the defense. Loper taught childbirth classes. Beard had taught the breast feeding section of Loper's childbirth classes a time or two. They knew each other from fetal management. She had a sister-in-law who worked at Wayne General Hospital as a pharmacy technician, another sister-in-law who formerly worked there as a registered nurse and a mother-in-law who retired from Wayne. She said she could be objective, but during Plaintiffs' voir dire, the following exchange took place:
BY MR. WILLIAMSON: Do you believe that Dr. Powell will tell you the truth, ma'am, No. 5, even if it hurts himself? Do you start off believing that?
BY PROSPECTIVE JUROR MS. JONES: Yes.
* * * *
BY MR. WILLIAMSON: No. 10, ma'am, you believe that Dr. Powell *917 will tell youregardless, will tell us if he's wrong. Is that right? If he made a mistake, you think he's going to tell us on the stand; is that correct?
BY PROSPECTIVE JUROR BEARD: Yes.
3. Kelli A. Bowles: Dr. Powell was the football team's physician. Dr. Powell works with some of the members of her dance team. The relationship with Dr. Powell is ongoing. She sees him every Friday night. When asked if the relationship would affect her, she answered, "It shouldn't."
4. Prince Staten: Dr. Powell was his family physician.
5. Alice Powe. Her mother worked in the surgery department at Wayne General Hospital in 1994. Her mother retired in January of 1997, just prior to the trial. She was a friend of Dr. Powell. Dr. Powell's son and her son were playmates at one time. Dr. Powell spoke at her daughter's graduation.
¶ 14. As shown above, Davis challenged for cause five jurors who ended up on the jury, those being Ellen Ann Walters, Sue Beard, Kelli Bowles, Prince Staten and Alice Powe. Hence, it is of no moment that Davis did not accept the trial court's offer of two additional peremptory challenges. After Davis's use of her four peremptory strikes, five jurorswho had been the target of her challenges for causeactually served on the jury. Thus, the trial judge's offer of two additional peremptory strikes was not even half a loaf, far less than what was needed to cure the problem. Further, it appears to us that the challenge for cause to those five jurors, Ellen Ann Walters, Sue Beard, Kelli Bowles, Prince Staten and Alice Powe, should have been sustained.
¶ 15. We believe the cases of Hudson v. Taleff, 546 So.2d 359 (Miss.1989); Scott v. Ball, 595 So.2d 848 (Miss.1992) and Brown v. Blackwood, 697 So.2d 763 (Miss.1997) compel a reversal of this case on the issue presented by Davis. Each of these cases teaches unequivocally that the trial judge should take all necessary corrective measures to insure an unbiased jury. Brown, 697 So.2d at 770; Scott, 595 So.2d at 850; Hudson, 546 So.2d at 363. The court in each of the cited cases recognized that statistical aberrations often occur due to a large number of persons on the venire being associated in some way with the medical clinic or physician involved.
¶ 16. In Hudson, Clara Hudson brought suit in the Circuit Court of Lauderdale County, Mississippi, alleging negligence arising out of eye surgery performed by Dr. Michael Taleff. Hudson, 546 So.2d at 359. A jury trial resulted in a verdict in favor of Dr. Taleff. Id. Of the 40,338 qualified voters of Lauderdale County, ninety-two people were summoned for jury duty. Id. at 361. However, there was only a jury pool of twenty-five from which a jury could be selected. Of those twenty-five, twelve, or 48 percent, had some connection with Dr. Taleff, his medical partners or his attorney. Mrs. Hudson challenged for cause thirteen of the twenty-five member jury pool. The trial judge excluded from service two of the thirteen challenged. Mrs. Hudson alleged that the jury was prejudiced, biased and unfair because of these connections. On appeal, the Mississippi Supreme Court, citing Mhoon v. State, 464 So.2d 77 (Miss.1985), held that because of the "statistical aberration" of the makeup of the venire and the strong likelihood that the opportunity for undue influence over other jurors in this case was too great, the trial jury was not impartial. The case was remanded for a new trial. Id. at 361-62.
¶ 17. The Hudson court made clear, however, that it was not addressing the question of the appropriate remedy in *918 smaller counties when statistical aberrations occur in the jury pool. But, the question unaddressed in Taleff was squarely addressed in Scott.
¶ 18. In Scott, Ida Bell Scott brought a' medical malpractice action against Dr. David Ball in the Circuit Court of Panola County, indeed a small county. Scott, 595 So.2d at 849. The jury found for Ball and Scott appealed. Id. While the supreme court reversed because of a Batson violation, it made clear that the remedy pronounced in Hudson applies to smaller counties such as the county in today's case. This is what the court said:
In our recent decision, Hudson v. Taleff, [546 So.2d 359 (Miss.1989)], we added a factor which the circuit judge should consider in reaching his decision whether or not to excuse a prospective juror when a rational reason to do so has been brought to his attention.... Our implicit, if not explicit holding in Hudson is that the circuit judge's discretion in determining a juror's qualification where a reasonable challenge has been made is considerably narrowed where, without great inconvenience, other prospective jurors may be readily summoned.... In this case the circuit judge could have excused these challenged prospective jurors and still have had remaining on the panel a sufficient number against whom there had been no challenge to form a trial jury. Furthermore, the circuit judge could have directed the clerk to draw more names from the jury wheel. Hudson, supra. While Panola County has two judicial districts, thus reducing the number of prospective jurors that would have been the case had the jurors come from the entire county, it was also within the court's discretion to cause jurors to be summoned from the other judicial district.... In a suit in which a physician is a party, a circuit judge must be sensitive to the qualification of a juror who has himself or herself been treated by him, or whose family members have at one time or another been patients of his. This is especially true in our smaller cities and towns, where often there is a shortage of practicing physicians.

Scott, 595 So.2d at 850-51 (emphasis added).
¶ 19. In Brown, the supreme court also made it clear that the Hudson remedy applies to smaller counties when it specifically found that the trial judge had correctly ruled that Hudson was applicable to a medical malpractice case filed in Bolivar County, a county much smaller than Lauderdale County, the county involved in Hudson. Brown, 697 So.2d at 770.
¶ 20. We recognize and acknowledge that the trial judge sought to comply with Hudson, but we also conclude that he failed to comply with the Hudson requirements. The giving of only two extra peremptory challenges was woefully inadequate to compensate for the high number of jurors connected to Dr. Powell, Dr. Walley and the Walley Clinic. Moreover, the four peremptory strikes Davis had were effectively taken away when she had to use them on jurors who should have been stricken for cause. Even if she had accepted the trial judge's offer of the two additional peremptory strikes, her situation would not have improved because there were more than six jurors who should have been stricken for cause. This is hardly what Hudson means by its holding that trial judges should ameliorate the effect of statistical aberration by, among other things, granting additional peremptory challenges. Id. at 363. Further, the trial judge sustained only one out of eighteen of Davis's challenges for cause. This again is hardly what Hudson means by its holding that a trial judge, in an effort to ameliorate the effect of statistical aberration, should sustain at least some of the challenges for cause. Id.
*919 ¶ 21. Our standard of review is whether the trial judge abused his discretion with respect to the jury selection process. In our view, the facts undergirding Davis's challenges for cause make a clear and convincing case that the challenges should have been sustained. Because of the failure of the trial court to take sufficient action to ameliorate the prejudicial effect of the statistical aberration in the jury pool, we are constrained to hold that Davis was denied her fundamental right to trial by a fair and impartial jury. Accordingly, we reverse and remand for a new trial.
¶ 22. THE JUDGMENT OF THE CIRCUIT COURT OF WAYNE COUNTY, IN FAVOR OF WILLIAM E. POWELL AND THE WALLEY CLINIC IS REVERSED AND REMANDED FOR A NEW TRIAL CONSISTENT WITH THE HOLDING HEREIN. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEES.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., BRIDGES, LEE, MOORE, PAYNE, and THOMAS, JJ., concur. MYERS, J., not participating.