ROBERTS, J.,
for the Court.
¶ 1. Kathleen W. Heaney sued Dr. Thomas F. Hewes and Dr. William L. Seidensticker for medical malpractice. During voir dire, several members of the venire indicated that they had either direct or indirect professional contact with Dr. Hewes and/or Dr. Seidensticker. Heaney requested that the circuit court excuse *223 those members of the venire for cause, but the circuit court declined to excuse some of those jurors. Ultimately, the jury returned a verdict for Dr. Hewes and Dr. Seidensticker, and Heaney filed unsuccessful post-trial motions. Aggrieved, Heaney now appeals and claims the circuit court erred when it did not remove all prospective jurors who had prior contacts with Dr. Hewes and Dr. Seidensticker. Finding no error, we affirm.

FACTS AND PROCEDURAL HISTORY

¶ 2. Heaney underwent surgery to replace her right hip. Dr. Hewes and Dr. Seidensticker performed that surgery. Heaney later sued Dr. Hewes and Dr. Seidensticker for medical malpractice. According to Heaney, Dr. Hewes and Dr. Seidensticker did not properly perform the hip replacement surgery, and she suffered multiple hip dislocations as a result. Dr. Hewes and Dr. Seidensticker denied that they committed medical malpractice, and the matter proceeded to trial in the Harrison County Circuit Court.
¶ 3. During the circuit court’s voir dire of the venire, many prospective jurors indicated that they personally — or members of their family — had been treated by Dr. Hewes or Dr. Seidensticker. Eight members of the venire had personally been treated by either Dr. Hewes or Dr. Seid-ensticker. Two members of the venire had personally been patients of Dr. Hewes. Those members of the venire were James Webb and Mary Ann Blount. Six members of the venire had been patients of Dr. Seidensticker: Keith Starita, David Moh-ler, Jan White, Ruby Necaise, William Jackson, and Lana Hoda. Additionally, Mohler’s mother had been treated by Dr. Seidensticker.
¶ 4. Aside from Mohler, eight additional members of the venire had a family member who had been a patient of Dr. Hewes or Dr. Seidensticker. Dr. Hewes had treated a family member of six members of the venire: Donna Winstead, Theresa Wilson, Susan Beckham, Kelle Mayfield, Nancy Peterson, and Nancy Graben. Mayfield and Peterson also each had a family member who had been treated by Dr. Seidensticker. Additional voir dire by the circuit court and counsel for Heaney resulted in more information about those prior contacts, which will be discussed later.
¶ 5. During the challenges for cause portion of jury selection, the circuit court mentioned that it had notes on several jurors that were potential candidates to excuse for cause. The circuit court excused juror fifteen, Kathy Hanephin, because Hanephin expressed an opinion that damages should be limited in medical malpractice cases. The circuit court also excused juror twenty-three, Francesca McKay, because McKay would have to go out-of-town soon. The circuit court later excused juror thirty-nine, Gearldine Williams, for the same reason. Next, the circuit court excused juror twenty-six, Jan White, for cause. Heaney’s stated reason for challenging White was “[s]he said that she could not put out of her mind the limits.” The circuit court then added, “she or some member of her family also was treated by ... Dr. Seidensticker.”[1]
¶ 6. After the circuit court excused White from the jury, the circuit court stated that it had juror twenty-seven, Ashley Harris, “marked as possible cause.” *224 Counsel for Heaney requested that Harris be excused for cause since “[s]he said she could not set her personal feelings aside ... with regard to caps.” The circuit court added that Harris had a conflict with her employer that might interfere with her duties as a juror. Accordingly, the circuit court excused Harris. Next, the circuit court mentioned that it “made a notation about cause on Niki Burwell, Dr. Burwell’s wife. He’s an orthopedic [physician].” Heaney’s attorney challenged Burwell, and the circuit court excused her for cause.
¶ 7. Following the circuit court’s removal of Burwell for cause, Heaney’s attorney challenged juror thirty-five, Peterson, and juror thirty-six, Carmon Gaines. During voir dire, Peterson’s responses indicated that both Dr. Hewes and Dr. Seidensticker had previously treated people in her family. Peterson also stated that she had previously sat on a jury in a medical malpractice case. According to Peterson, that jury returned a verdict for the defendant physicians. Peterson also expressed her opinion that “there should be a predetermined limit on the amount of damages [one] can recover in a lawsuit against a doctor[.]” Like Peterson, Gaines indicated that there should be a limit to the damages one can recover in a lawsuit against a doctor. The circuit court struck Gaines for cause, but declined to strike Peterson. According to the circuit court, “just because [the jury on which Peterson sat] ruled for the defendants, I don’t think that that gives any reason for a cause challenge. So [Peterson will] remain.”
¶ 8. The circuit court then stated, “[n]ow I see nothing on any of the rest of them that would indicate to me that they should be struck for cause, but that doesn’t limit you if you want to try it.” Counsel for Heaney then challenged all members of the venire that had a previous relationship with Dr. Hewes or Dr. Seidensticker. Hea-ney’s attorney also attempted to have juror seventeen, Mohler, struck for cause. Heaney’s attorney mistakenly thought that Mohler had been treated by Dr. Hewes, and that Mohler’s son had been treated by Dr. Seidensticker. In fact, Mohler’s voir dire responses indicated that he and a member of his family had been a patient of Dr. Seidensticker.[2] In any event, the circuit court declined to strike Mohler for cause. Likewise, the circuit court declined to strike all members of the venire that had prior contacts, directly or indirectly, with Dr. Hewes and/or Dr. Seidensticker. The circuit court’s stated reasoning was that “I’m not going to strike the others because I’d almost have to strike the whole panel.”
¶ 9. To summarize, the circuit court excused seven jurors for cause-one of whom had been previously treated by Dr. Seiden-sticker. However, the circuit court refused two of Heaney’s attorney’s specific challenges for cause. That is, the circuit court refused to strike Peterson and Moh-ler for cause. The circuit court also declined to strike all members of the venire with prior direct or indirect contact with Dr. Hewes and Dr. Seidensticker.
¶ 10. At that point, the parties moved along to the peremptory challenge portion *225 of jury selection. Counsel for Heaney used peremptory challenges on (1) juror two, Webb; (2) juror seven, Winstead; and (3) juror twelve, Wilson. Heaney’s attorney declined to use a peremptory challenge on juror sixteen, Starita, because “although he has been a previous patient of Dr. Seidensticker, ... if we did take our peremptory challenge on him, the next person we would get is David Mohler ... [a]nd we would therefore still have a ... previous patient of one of the defendants on the jury.” Counsel for Heaney then tendered the panel to counsel for Dr. Hewes and Dr. Seidensticker.
¶ 11. After counsel for Dr. Hewes and Dr. Seidensticker exercised their four peremptory challenges, the panel was tendered back to Heaney’s attorney. Hea-ney’s attorney used his last peremptory challenge on Mohler. As for the alternates, neither of the two alternates had prior contact with Dr. Hewes or Dr. Seid-ensticker. However, one juror, Starita, personally saw Dr. Seidensticker fifteen years prior to the trial. The record reflects that Dr. Seidensticker performed some surgical procedure for Starita, but the precise procedure is unclear beyond that it was not a hip replacement surgery. When asked whether his prior experience would cause him to favor Dr. Seidensticker, Starita answered, “[n]ot at all.”
¶ 12. The transcript before us is restricted to the events related to jury selection. Thus, we are unaware of anything that occurred at trial beyond voir dire and jury selection. The jury ultimately returned a verdict for Dr. Hewes and Dr. Seidensticker. Heaney appeals and claims the circuit court erred when it declined to excuse all jurors who had prior direct or indirect contact with Dr. Hewes or Dr. Seidensticker.

STANDARD OF REVIEW

¶ 13. “Article 3, § 14 of the Mississippi Constitution guarantees due process of law, including a fair and impartial trial.” Brown by & Through Webb v. Blackwood, 697 So.2d 763, 769 (Miss.1997). The circuit court has an absolute duty to see that the jury selected to try any case is fair, impartial, and competent. Id. (citing Scott v. Ball, 595 So.2d 848, 850 (Miss.1992); King v. State, 421 So.2d 1009, 1016 (Miss.1982)). Where, as here, we review a circuit court’s decision whether to excuse a potential juror for cause, we are mindful that circuit courts have “wide discretion in determining whether to excuse any prospective juror, including one challenged for cause.” Brown, 697 So.2d at 769 (citations omitted). Accordingly, we will reverse the circuit court only where its decision is clearly erroneous or against the overwhelming weight of the evidence. Burnett v. Fulton, 854 So.2d 1010, 1013(¶ 7) (Miss.2003) (citations omitted). We defer to the circuit court due to its relative proximity to the venire during voir dire and the fact that the circuit court is in a better position to measure the prospective jurors’ responses. Id.

ANALYSIS

WHETHER THE CIRCUIT COURT ERRED WHEN IT DECLINED TO ALLOW HEANEY’S REQUEST TO EXCUSE SEVERAL MEMBERS OF THE VENIRE FOR CAUSE.

¶ 14. Heaney claims the circuit court committed reversible error when it did not grant her challenges for cause. Sixteen members of the fifty-three-person venire had direct or indirect prior professional contacts with Dr. Hewes and/or Dr. Seidensticker. According to Heaney, the circuit court should have excused those people for cause or taken other remedial *226 measures to ameliorate those people’s influence over the rest of the venire.
¶ 15. In Hudson v. Taleff, 546 So.2d 359, 361-62 (Miss.1989), twelve people out of the twenty-five-person venire had contacts with the defendant doctor, his medical partners, or his attorney. The plaintiff unsuccessfully requested that the circuit court excuse for cause every member of the venire who had such prior contacts. Id. at 362. The Mississippi Supreme Court held that there was a “statistical aberration” in the number of jurors who had previously been treated by the defendant in Hudson. Id. at 364. The supreme court went on to hold that the circuit court should have: (1) afforded counsel more peremptory challenges; (2) increased the size of the venire “as well as affording additional challenges”; or (3) sustained at least some of the challenges for cause. Id. at 363. Accordingly, the supreme court reversed the judgment of the circuit court and remanded the matter for a new trial. Id. at 364. Hudson suggests that the proper resolution is to reverse the circuit court based solely on the number of jurors who had prior contacts with Dr. Hewes or Dr. Seidensticker and the circuit court’s decision not to take remedial measures to ameliorate the influence such members of the venire could have on the jury. However, a more recent decision by the Mississippi Supreme Court suggests that jurors with prior contacts should not be per se summarily excused for cause.
¶ 16. In Hamilton v. Hammons, 792 So.2d 956, 962(¶ 28) (Miss.2001), “several of twenty-three potential jurors noted that they knew one of five plaintiffs or counsel for the plaintiffs.” “Moreover, some of those potential jurors further stated that if they had to hire a lawyer, they would hire [counsel for the plaintiffs].” Id. Counsel for the defendant challenged six of those jurors for cause, but the circuit court declined to excuse all such members of the venire. Id. at 962-63(¶ 31). After a successful verdict for the plaintiffs, the defendant appealed and claimed, among other things, that the circuit court erred when it did not excuse for cause all members of the venire who had prior contacts with the plaintiffs or their attorney. Id. at 958-59 (¶¶ 2-3,10).
¶ 17. The supreme court noted that, after peremptory challenges, only one juror that the plaintiff attempted to have removed for cause sat on the jury. Id. at 964(¶37). That juror previously stated that she would seek out the plaintiffs attorney if she needed legal representation. Id. However, that juror had not sought out the plaintiffs attorney’s representation in the past. Id. Accordingly, the supreme court declined to find reversible error. Id. at (¶ 38). In so doing, the supreme court stated that there are two competing forces “that enter into the equation as to the impartiality of a juror.” Id. at 963(¶ 34). The first “force” is “the factor or circumstance which tends to indicate a potential for bias on the part of that juror.” Id. The second “force” is “the juror’s promise that he or she can and will be impartial.” Id. The supreme court went on to state:
To the extent that any juror, because of his relationship to one of the parties, his occupation, his past experience, or whatever, would normally lean in favor of one of the parties, or be biased against the other, or one’s claim or the other’s defense in the lawsuit, to this extent, of course, his ability to be fair and impartial is impaired. It should also be borne in mind that jurors take their oaths and responsibilities seriously, and when a prospective juror assures the court that, despite the circumstance that raises some question as to his qualification, this will not affect his verdict, this promise is entitled to considerable deference.... *227 These varied imponderables make selection of jurors a judgment call peculiarly within the province of the circuit judge, and one we will not on appeal second guess in the absence of a record showing a clear abuse of discretion.

Id.

¶ 18. Though Hudson suggests that, without more, the circuit court committed reversible error by declining to strike all jurors with prior contacts to the defendants, Hamilton states otherwise. The supreme court did not distinguish Hudson and Hamilton based on the fact that a physician was the defendant in Hudson, and the defendant was not a physician in Hamilton. Accordingly, that the defendants in this case are retired physicians is of no moment, and we therefore balance the competing forces as mentioned in Hamilton. Hamilton, 792 So.2d at 963(¶ 34). Further, Hamilton specifically states that the circuit court’s decision is entitled to “considerable deference.” Id. at 964(¶ 37).
¶ 19. Out of fifty-three specifically mentioned members of the venire, sixteen veniremen had direct or indirect contacts with one or both of the defendants. In Hudson, twelve of twenty-five veniremen had prior contacts with the defendant, his partners, or his attorney. Consequently, there is no severe “statistical aberration” in this case — at least not to the degree as in Hudson. Additionally, both Dr. Hewes and Dr. Seidensticker were retired at the time of the trial. Thus, no member of the venire had an ongoing doctor/patient relationship with one of the defendants, and there was no risk that a member of the venire would be influenced by the possibility of future treatment by one of them.
¶ 20. Though it is not singularly outcome determinative in this case, it bears mentioning that Heaney’s attorney did not request that the circuit court grant him additional peremptory challenges, nor did he request that the circuit court increase the size of the venire — which are both curative steps the circuit court might consider under Hudson. Hudson, 546 So.2d at 363. Additionally, Heaney’s attorney only challenged two specifically named members of the venire for cause on the basis of their prior contacts with Dr. Hewes and Dr. Seidensticker. That is, while counsel for Heaney generally attempted to have all members of the venire with prior contacts removed for cause, he only challenged for cause two members of the venire on any specific basis.
¶ 21. What is more, Peterson and Moh-ler both indicated that their prior experiences would not cause them to be partial toward Dr. Hewes or Dr. Seidensticker, and neither one of them sat on the jury. Mohler’s voir dire responses indicated that he and his mother had been treated by Dr. Seidensticker. However, Mohler did not state that he would believe Dr. Seiden-sticker over anyone else. Based on Moh-ler’s voir dire responses, Mohler could have just as easily been biased against Dr. Seidensticker based on Dr. Seidensticker’s having performed hip replacement surgery on his mother and his mother’s subsequent problem with dislocations. That is, one could reasonably argue that Heaney had more reason to keep Mohler on the jury in that Mohler could have been sympathetic to Heaney, who suffered problems similar to his mother.
¶22. Starita sat on the jury. Starita personally saw Dr. Seidensticker fifteen years prior to the trial. Dr. Seidensticker performed some unspecified surgical procedure for Starita. The exact procedure is unclear, but it was not hip replacement surgery. Heaney’s attorney did not ask Starita how many times he personally saw Dr. Seidensticker, whether he was pleased or displeased with Dr. Seidensticker’s *228 treatment, whether he formed an opinion of his skills as a physician from his prior relationship with him, or any other such questions which would shed light on Stari-ta’s ability to decide the case based solely on the facts and the law. From the record, it appears that Heaney was not even aware that Dr. Seidensticker assisted Dr. Hewes during her procedure until after her recovery. As far as we can surmise from the record, Starita’s relationship with Dr. Seidensticker fifteen years earlier may well have been the same. Moreover, when asked whether his prior experience would cause him to favor Dr. Seidensticker, Star-ita answered, “[n]ot at all.”
¶ 23. “[J]urors take their oaths and responsibilities seriously, and when a prospective juror assures the court that, despite the circumstance that raises some question as to his qualification, this will not affect his verdict, this promise is entitled to considerable deference[.]” Hamilton, 792 So.2d at 963(1134). Suffice it to say, we are not prepared to say that, in general, jurors commit perjury when they promise they can remain impartial. The jury’s verdict was eleven to one in favor of Dr. Hewes and Dr. Seidensticker. The record only contains the events that took place during jury selection. We do not know how Starita voted. Regardless of his vote, the result would have been the same.
¶ 24. With due respect for the dissent, there is nothing in the record regarding whether Starita was pleased or displeased with Dr. Seidensticker’s service as a surgeon. We only know that, fifteen years prior to Heaney’s trial, Dr. Seidensticker performed some unspecified surgery on Starita. Whatever opinion Starita had, he swore that his prior experience would not cause him to favor Dr. Seidensticker. While it is within the realm of possibilities that Starita could have a favorable impression, based on the voir dire at trial, there is no reason to reach that conclusion. Dr. Seidensticker was retired at the time of Heaney’s trial. Starita did not expect that he or anyone in his family would ever again have a patient/physician relationship with him. There were no circumstances that tended to “indicate a potential for bias” on Starita’s part. Hamilton, 792 So.2d at 963(¶ 34). Combined with Stari-ta’s sworn statement that nothing about his experience with Dr. Seidensticker would cause him to favor Dr. Seidensticker, the circuit court was well within its discretion when, per Hamilton, it balanced the two competing forces and did not excuse Starita for cause. Id. After all, these “varied imponderables make selection of jurors a judgment call peculiarly within the province of the circuit judge, and one we will not on appeal second guess in the absence of a record showing a clear abuse of discretion.” Id.
1125. Starita swore that he would not favor Dr. Seidensticker even though he had a prior relationship with him. That promise is “entitled to considerable deference.” Id. Notwithstanding Starita’s promise, the dissent would find that the circuit court clearly abused its discretion because (a) Dr. Seidensticker performed some unspecified surgery on Starita fifteen years prior to Heaney’s trial, and (b) the circuit court could have excused Stari-ta for cause and still would have had enough jurors to fill a jury panel. Without more evidence to indicate a bias on Stari-ta’s part, to find an abuse of discretion under these facts would be to find a complete lack of discretion. That would be contrary to the supreme court’s decision in Hamilton. We cannot find a clear abuse of discretion in the circuit court’s decisions regarding jury selection. Accordingly, we are required to affirm the judgment of the circuit court.
*229 ¶ 26. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
MYERS, P.J., ISHEE AND CARLTON, JJ., CONCUR. BARNES, J., CONCURS IN RESULT ONLY. IRVING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, C.J., AND GRIFFIS, J. LEE, P.J., AND CHANDLER, J., NOT PARTICIPATING.

. It is unclear whether White’s prior contact with Dr. Seidensticker was one of the reasons the circuit court struck White. Based on the circuit court’s statement, it seems appropriate to assume that her prior contact was at least one of the circuit court’s reasons for excusing her for cause.

. Mohler indicated that at some unspecified time prior to the trial, Dr. Seidensticker had performed a hip replacement surgery on his mother. Mohler also indicated that his mother had “problems with dislocations.” Additionally, Dr. Seidensticker performed knee surgery for Mohler at some unspecified time prior to the trial. Counsel for Heaney asked Mohler, "would that weigh on your mind that you had seen Dr. Seidensticker and your mom had seen Dr. Seidensticker?” Mohler answered, "[n]o, sir.” Later, counsel for Heaney asked, "there's nothing about the relationship that would make you favor Dr. Seidensticker?” Again, Mohler responded, "Mo.”